### HICKMAN ET AL. *v.* RAYL.

LANDLORD AND TENANT.—*Lease.—To Commence in the Future.—Breach.*—
Where, by the terms of a lease of lands, for a term to commence at a specified time in the future, the lessor binds himself to make certain stipulated improvements or repairs on such lands, prior to the time when possession is to be given and such term to commence, the lessee may refuse to accept possession thereof, if, at such date, such repairs or improvements shall not have been made; such failure constituting a breach of the terms of the lease.

SAME.—*Failure to Perform.—Act of God.*—The fact that the lessor was prevented from making such repairs or improvements by circumstances over which he had no control, even by the act of God, is no excuse for his failure.

SAME.—*Offer to Compensate.—Defence.*—Such failure is a breach of the terms of the lease, which can not be mended by an offer, by the lessor, to compensate the lessee for all damages he may sustain thereby; nor by an averment that such breach was one by which the lessee could sustain no damage .

SAME.—*Contract.—Promissory Note Given for Rent.—Action Upon.—Defence.*
—If, upon the execution, in writing, of such lease, containing such stipulations, a promissory note be executed by the lessee, to the lessor, for the rent of such term, each is but part, and both together the whole, of one contract; and if, because of the failure of the lessor to put the premises leased in the condition so agreed upon, the lessee shall have failed and refused to accept possession thereof, the latter, in an action against him, by the lessor, upon such note, may aver and prove such failure by the lessor, as a defence to the entire action.

SAME.—*Partial Performance by Lessor Insufficient.*—Where, in such action, the stipulation to have been performed by the lessor was the erection, by the time that possession was to have been given, of a certain fence upon the premises leased, part of which, only, had been so completed, the fact that he had been prevented from completing the remainder, being a portion crossing a stream, until after such date of. possession, by reason of high water in such stream, does not constitute a good cause of reply to an answer by the lessee averring such failure.

From the Switzerland Circuit Court.

*S. Carter, W. R. Johnston* and *H. W. Harrington,* for appellants.

*C. E. Walker, J. A. Works* and *J. D. Works,* for appellee.

BIDDLE, J.—This action is founded on a promissory note, made by the appellants to the appellee.

The answer to the complaint is as follows:

"That said note was executed by the defendant Silas Hickman, as principal, and by the defendant George W. Hickman, as surety for the said Silas, in consideration of the rent of a farm owned by the plaintiff, which he rented to the defendant Silas Hickman, by articles of agreement made between the said plaintiff and said Silas, on the same day the note was executed, and as a part of the same agreement, by which articles the plaintiff, in consideration of the obligation of the defendant Silas, thereinafter named, agreed to rent to the said Silas the farm then owned by the plaintiff, in Egypt Bottom, Switzerland county, Indiana, for one year, commencing on the 1st day of March, 1873, and ending on the 1st day of March, 1874. And the plaintiff further agreed to put a new fence on his upper line, commencing at his barn, running thence north to the section line, said fence to be built by the 1st day of March, 1873. And the defendant Silas agreed, that he would return said farm to the plaintiff in as good order as he received it, ' accidents by the elements excepted ;' to haul and spread upon said farm the manure from around the barn on said farm ; to deliver said farm to the plaintiff, on the 1st day of March, 1874, and to execute to the plaintiff his note for one thousand one hundred and twenty-six dollars and sixty-six cents ; that said note was given for no other or different consideration, in whole or in part, whatever. And the defendants aver, that the plaintiff, on the 1st day of March, 1873, did not deliver to the defendant Silas the possession of said farm, or any part of it, although he demanded of the plaintiff the possession of

the same, according to the terms of said agreement; but, on said day, the plaintiff was in possession of the dwelling-house on said farm, and residing therein with his family; that the barn on said farm was in possession of the plaintiff on said day, and had six hundred bushels of corn in the same; that all his stock was still on said farm, and he could not deliver possession thereof, together with the dwelling-house and barn thereon; and that he had not built said fence, or any part thereof, by said 1st day of March, 1873; and that said defendant Silas never entered into or took possession of said farm, or any part thereof, for the reason that said plaintiff was in the possession of the dwelling-house, and residing therein with his family, and that said barn was occupied by the plaintiff's corn, and plaintiff's stock was on said farm, on said 1st day of March, 1873, and because the plaintiff had not built said fence, by said day. Wherefore," etc.

A copy of the agreement was made an exhibit with the answer.

The plaintiff replied to the answer:

First. The general denial; and,

Second. As follows: "That before the first day of March, 1873, he had rented a house in the town of Vevay, Indiana, for a year, paying in advance one hundred dollars thereon; and before the 1st day of March, 1873, he, with his family, had moved out of said house on said farm, with his household furniture, and was then and there ready and willing to give to the said Silas possession of said house and farm, on said 1st day of March, 1873, if he would accept the same; that he had removed the stock off of said farm, and as to the corn in the barn, plaintiff called on defendant Silas, one week before the 1st day of March, 1873, and told him said corn was there, but that he, the plaintiff, would have all the same removed off of said farm, before the first day of March, 1873, if the said Silas insisted, but would like to leave the corn in the barn until the weather was more favorable for hauling it

away, if he, Silas, would consent thereto; and he avers that Silas did then and there answer that plaintiff might leave said corn in the barn until it was convenient to remove the same, and told plaintiff that he did not want to use the barn until fall, and that said plaintiff might leave the corn in the barn until then, if he wished. And he says, that, as to the building of said fence on his upper line, in plenty time to complete said fence before said 1st day of March, 1873, he procured hands to build the same, and procured posts and hands to make said fence, and proceeded to dig the holes for the posts along the whole line of said fence, and placed the posts at the holes, to be put up, and proceeded to put up said fence; but that there is a creek which puts into the Ohio river, across said upper end of said farm, where said fence was to be built, and that prior to said 1st day of March, 1873, and while plaintiff was erecting said fence, said Ohio river rose very high, and forced the backwater up into said creek, filling up the holes dug for said fence at the place where said creek crossed said line, and floating off the posts and timber laid along the line of the fence, and rendering it impossible to go on and make said fence until the river should fall, and until after the first day of March, 1873. And he avers, that so soon as the river did fall, he went on and completed said fence where said creek crossed said upper line of said fence, being forty or fifty panels of fence; and that but for said rise in the river, he could and would have completed the whole of said fence before the 1st day of March, 1873, but was prevented therefrom by said high water, only. And he further avers, that before the 1st day of March, 1873, he had made all the rest of said fence, except the part in said creek, which was also completed before the 20th day of March, 1873. And he further avers, that said fence was not necessary to the protection of said farm on the 1st day of March, 1873, nor afterwards while said water remained up; and the defendants could not be damaged in the possession and use of said

farm by reason of said small portion of said fence being incomplete until the 20th of March, 1873. And the plaintiff, on said 1st day of March, offered to said Silas to pay for any and all damage he might sustain by reason of said fence being incomplete, and to give him surety for the payment of any such damage. He further avers, that under and by reason of said contract, he had, before the 1st day of March, 1873, sold off his stock and farm implements, and removed to the town of Vevay, and thereby putting himself in a condition not to cultivate said farm for said year 1873, and that he kept said farm ready for said Silas, until the 20th day of April, 1873, and offered him possession, and requested him to take possession thereof; but the said Silas, on the 19th day of April, 1873, wholly refused to take possession of said farm, and the time for renting being gone by, the said plaintiff lost the use of said farm for said year, and sustained damages to the amount of said note. Wherefore," etc.

There is a third paragraph of reply which we do not set out, because we think the question decisive of the case arises upon the second paragraph.

The defendants filed a demurrer to the second paragraph of reply, alleging as ground the insufficiency of the facts therein averred. The demurrer was overruled, and exceptions reserved. Issues were joined, a jury trial had, a verdict returned in favor of the plaintiff for one thousand two hundred and twenty-seven dollars and ninety cents, and judgment—over a motion for a new trial and exceptions taken—rendered upon the verdict. During the trial, the court refused certain instructions asked by the defendants, and gave certain instructions asked by the plaintiff, over the objections of the defendants. To these rulings the defendants reserved exceptions; but they only raise the same question presented by overruling the demurrer to the second paragraph of reply. The solution, therefore, of the one question, as we have remarked, will decide the whole case.

The counsel upon both sides have aided us much in this investigation. They have shown marked ability and unusual research, and we take pleasure in acknowledging the benefits we have derived from their learning and industry.

The making of the note sued on and the execution of the agreement set up in the answer were simultaneous acts, done by the same parties, about the same subject-matter; the note and the agreement, therefore, belong to the same transaction, and, taken together, constitute but one contract, as much as if they were written on the same piece of paper. This is a principle so well established that it needs no support from authority.

A party can not recover on a special contract which he has failed to perform on his part. "It is a good defence to an action on a contract, that the obligation to perform the act required, was dependent upon some other thing which the other party was to do, and has failed to do. And if, before the one party has done any thing, it is ascertained that the other party will not be able to do that which he has undertaken to do, this will be a sufficient reason why the first party should do nothing. And this excuse is valid, although the omission by the other party to do the thing required of him, was produced by causes which he could neither foresee nor control. And if it is provided that the thing shall be done 'unless prevented by unavoidable accident,' the accident to excuse the not doing, must be not only unavoidable, but must render the act physically impossible, and not merely unprofitable and inexpedient by reason of an increase of labor and cost." 2 Parsons Con. 675, 676.

"Every lessor binds himself to give possession, and not to give the party to whom he demises a mere right to take possession from a wrong-doer by an action of ejectment; and every lessee binds himself to accept possession and pay rent. If a party has agreed to take a house from a particular day, provided certain things are before then done by the

landlord, and the things are not done, he may decline to go on with the contract, and may refuse to take possession." 2 Addison Con., sec. 690. We think these elementary principles, as applicable to the case under consideration, are sustained by the authorities. *Spencer* v. *Burton,* 5 Blackf. 57; *Coe* v. *Smith,* 1 Ind. 267; *McCulloch* v. *Dawson,* 1 Ind. 413; *Heaston* v. *Colgrove,* 3 Ind. 265; *Maggart* v. *Chester,* 4 Ind. 124; *Johnson* v. *Powell,* 9 Ind. 566; *Allen* v. *Nofsinger,* 13 Ind. 494; *Morton* v. *Kane,* 18 Ind. 191; *Cromwell* v. *Wilkinson,* 18 Ind. 365; *Larimore* v. *Hornbaker,* 21 Ind. 430; *O'Kane* v. *Kiser,* 25 Ind. 168; *Clark* v. *Butt,* 26 Ind. 236; *Ireland* v. *Montgomery,* 34 Ind. 174; Co. Lit. 45 b.; *Salman* v. *Bradshaw,* 4 Cro. Jac. 304; *Andrews* v. *Paradise,* 8 Mod.; Case 240; *The Fitchburg Cotton Man'f'g Corp.* v. *Melven,* 15 Mass. 268; *The Bank of Columbia* v. *Hagner,* 1 Pet. 455; *Lawrence* v. *French,* 25 Wend. 443; *Wilson* v. *Martin,* 1 Denio, 602; *Christopher* v. *Austin,* 1 Kern. 216; *Grant* v. *Johnson,* 1 Seld. 247; *Strohecker* v. *Barnes,* 21 Ga. 430; *Chatterton* v. *Fox,* 5 Duer, 64; *Hurlbut* v. *Post,* 1 Bosw. 28.

Upon principle, and under these authorities, we think the second paragraph of reply is defective in several points. It shows that the appellee did not deliver possession of the premises to the appellant, according to the stipulations in the lease; and therefore that he first broke the contract. We need not decide whether the rise of the Ohio river, by which the appellee was for a time prevented from completing the fence, was the act of God, which would excuse the appellee from making the fence, because if it had been such an act, he could not compel the lessee to accept the premises upon any other terms than those provided in the lease. How far the rise of the river would excuse the appellee, if he was sued for a breach of his part of the contract, is a question not before us. But we are very certain it does not excuse him from delivering the premises to the lessee according to the terms of the lease. If a landlord should let a house for

years, and the term was to commence at some future day, and in the mean time lightning should destroy the house, no one would contend that the lessee was bound to accept the premises. The excuse, therefore, alleged in the reply for not completing the fence, is insufficient. Nor can the appellee mend the breach he made in the contract by offering to compensate the appellant in damages, nor by alleging that he did not sustain damages. The appellant was entitled to the premises in the condition and at the time agreed upon, and he was not bound to accept them in any other condition, or at any other time.

There is a class of cases, however, where the agreement does not go to the whole of the consideration on both sides, and where the supposed condition is distinctly separable from other parts of the agreement, so that much of the contract may be performed on both sides, as though the condition were not there, it will be held as a stipulation, the breach of which only gives an action to the injured party. This doctrine originated, we believe, in the case of *Boone* v. *Eyre*, in the King's Bench, Easter term, Geo. III. See, 1 H. Bl. 273, note *a.*, and 2 W. Bl. 1312. But, upon a close examination of the case, it will be noticed that it was put upon the ground that the covenants had been in part executed; ASHHURST, J., declaring, that in such cases, "There is a difference between executed and executory covenants." And the same principles were declared by LORD KENYON in *Campbell* v. *Jones*, 6 T. R. 570; *Pickens* v. *Bozell*, 11 Ind. 275; *Boyle* v. *Guysinger*, 12 Ind. 273; *Morton* v. *Kane, supra.* But we are not embarrassed by these decisions in this case, because the agreements go to the whole consideration on both sides—the lease was the consideration of the note, and the note was the consideration of the lease; and no part of the contract, on either side, was ever performed.

There is another class of cases wherein the condition precedent has been partly performed by one party, whereby

the other party receives and accepts a benefit, in which it has been held that the party so partly performing his agreement may recover, against the party so benefited, the value of the thing granted or the services rendered, subject to all fair, equitable deductions; *Adams* v. *Cosby*, 48 Ind. 153.

All the authorities cited by the appellee, we believe, belong to this class of cases; at least none of them invade the principles to which we adhere in the decision of this case.

The judgment is reversed, and cause remanded, with instructions to sustain the demurrer to the second paragraph of reply.