WHITE SEWING MACHINE COMPANY v. DANIEL MULLINS, TIMOTHY F. DONAHOE AND EDWARD McGINTY.

*Suretyship—Locality of principal's acts.*

Sureties on the bond of a sewing machine agent are not responsible for his transactions outside of the territory assigned to him by his contract with the company.

In an action on the bond of a sewing machine agent it was *held* that all the papers connected with it and the material circum-

stances surrounding the parties and which might be supposed
to have been contemplated by them, should be considered
together in determining the liability upon the bond where the
contract secured by it was not otherwise clear.

Error to Marquette. Submitted June 17. Decided
July 2.

ASSUMPSIT. Plaintiff brings error.

*Dan H. Ball* for plaintiff in error. Extrinsic evidence
is inadmissible to vary the terms of a written contract,
2 Pars. Cont., 60–62; courts cannot supplement the con-
ditions of a bond, *Nims v. Vaughn,* 40 Mich., 356.

*W. P. Healy* for defendant in error. Written instru-
ments executed simultaneously with a bond and referring
to the same transaction are admissible to ascertain the
intention of the parties, *Locke v. McVean,* 33 Mich., 473;
*Western Life Ins. Co. v. Clinton,* 66 N. Y., 326.

GRAVES, J. In the latter part of the summer of 1876
the company, and the defendant Mullins, who then lived
at Ishpeming in Marquette county, contracted a plan
in writing whereby the company allotted to Mullins the
county of Marquette, except the townships of Eley, Re-
public and Michigamme, as territory he should have the
right to supply with their machines, and likewise bound
themselves to furnish him the machines therefor, on
certain specified terms in consideration of particular
undertakings on his part. At the same time the agreed
plan provided that he might prosecute the trade through
the territory, either by going from place to place therein
as a traveling dealer, or by conducting as a stationary
vendor at a "suitable store" at Ishpeming, his place of
residence.

The mode in which the dealing between the parties
was to be carried on was marked out, and provision
was made for striking monthly balances, and for the
giving of notes therefor by Mullins, or such other notes

taken by him for machines as should be acceptable to the company, and it was expressly declared that the agreement should operate from the 10th of August, or some two weeks prior to its delivery.

On the back of this writing, and constituting a part of the same transaction, the defendant Mullins, together with the other defendants, entered into a bond or obligation to the company, and conditioned that Mullins should pay the company all indebtedness or liability then existing or thereafter to exist from him to the company in any of certain specified shapes, and amongst them any indebtedness in the form of notes and endorsements.

The manifest purpose was to afford security to the company for Mullins' doings under the agreement, and not for operations not contemplated by the agreement and wholly foreign to it.

The entire set of papers, including certain sworn statements which were given at the same time in furtherance of the same enterprise, must be read together, and it is also proper to recall the material circumstances which surrounded the parties, and which they may be supposed to have contemplated when they formed their arrangements; and when the matter is thus regarded and illustrated the conclusion stated appears unavoidable. The proceedings were too closely linked together to be severed by construction and assigned to foreign and unconnected objects.

The company claiming that a cause of action had arisen on the bond on account of three notes made by Mullins to the company, and the endorsement of two others, and all of which were due and unpaid, brought this suit to recover the amount.

It appeared at the trial that some of these notes were for machines ordered by Mullins for trade in other sections, and were sent by the company directly to such foreign points, and were not furnished to supply the trade in the local territory in which he was to have the

monopoly, but to accommodate his independent negotiations for trade and sales elsewhere, and in regard to these the defendants claimed, and the judge ruled, there could be no recovery on the bond. The view taken was that the obligation did not extend to such transactions. The jury, following the instruction of the court, returned a verdict for a portion of the claim set up by the company, and rejected the rest.

The company complain of the ruling which caused this rejection.

The whole question turns on the construction of the obligation. If the court below did not err in restricting the operation of the bond to business fairly belonging to the specified territory, the judgment cannot be disturbed.

The counsel for the company controverts the ruling. He contends that the contract on the part of the company was to sell machines, and that the indebtedness to be secured by the bond was such as should arise from such sales, and that the contract did not aim in any way to confine the sales to the demands of any given territory, and did not contemplate that the operation of the bond should be less extensive than the sales.

· He insists that it was the intent of the arrangement to provide as extensive a business as Mullins could do, and not to circumscribe or limit it at all.

We cannot yield to this view. On the contrary, we think the circuit judge was substantially correct. The position of plaintiff's counsel cannot be harmonized with the terms or spirit of the writings. The terms are precise and clear in marking out a territorial site for the business, and although this predominant feature is not repeated in connection with the enumeration of other particulars, it is never departed from. In specifying other matters, and in giving details, this overruling part of the scheme was considered as understood, and the other parts were regarded as limited and controlled thereby and subject thereto.

It would follow from the position of plaintiff's coun-

sel that the arrangement as conceived and adjusted by the parties was to be without limits, and that by virtue of it Mullins was to be enabled to traffic anywhere and everywhere in the world, either in person or by agent, and that the company were to be entitled to supply the goods, and hold the parties to the bond liable for whatever of indebtedness, not exceeding the penalty, should arise from Mullins to the company in the course of such operations. The spirit of the arrangement is repugnant to anything so extravagant, and it cannot for a moment be admitted that the associate obligors of Mullins ever imagined they were incurring such a liability, or that they had any reason to suspect it.

As no sufficient ground is shown for disturbing the judgment, it must be affirmed, but defendants in error will recover their costs of this court.

The other Justices concurred.