Filed Dec. 15, 1883.

＊

No. 9600.

CITY OF LAFAYETTE v. JAMES ET AL.

PRINCIPAL AND SURETY.—Bond.—Surety, Liability of.—City.—Collection of Water Rents.—Defalcation.—In 1876 the council of the city of L. elected a "superintendent" of water-works, there being no law or ordinance specifying his duties or requiring him to give any bond, but he gave bond, with sureties, conditioned for the proper discharge of the duties of superintendent, and the payment of all moneys that might come to his hands as such. Subsequently, an ordinance was passed providing for the appointment of such superintendent and defining his duties, one of which was the collection of water rents. He collected such rents and became a defaulter as to a large amount thereof.

Held, that the sureties were not liable for the defalcation.

From the Tippecanoe Circuit Court.

.J. Park and J. Parsons, for appellant.

G. O. Behm, A. O. Behm, J. R. Coffroth and T. A. Stuart, for appellees.

ZOLLARS, J.—This action was instituted in the court below by the city of Lafayette against James, as the principal, and the other appellees, as sureties, upon a bond. A demurrer by appellees, except James and McCarthy, was sustained to the first paragraph of the complaint. A motion for a new trial by the city was overruled, and judgment was rendered in favor of the city against James, and against the city in favor of the other appellees. Proper exceptions were taken by the city, and the rulings are assigned as error in this court. These assignments may be considered together, as each presents the main question in the case, though in a different way.

The facts, as developed by the pleading and evidence, may be summarized as follows:  Sometime before the year 1876 the city erected water-works, to supply water for public and private use.  Up to June, 1876, the city managed the works, chiefly through a committee, called a committee on water-works. On the 29th day of May, 1876, the common council of the city passed a resolution to go into an election for a superintendent for the water-works, and thereupon elected appellee James as such superintendent. This was the only legislation of any kind, either by way of resolution, ordinance, or by-law, that had been had by the city council at the time of the passage of the above resolution and election of James, and up to a time which was subsequent to the approval of the bond in suit. The bond is in due form, payable to the city of Lafayette, and conditioned for the payment of $2,000. The condition of the bond is as follows: "The conditions of the above obligation are, that should the above bound Dundy A. James honestly and faithfully discharge his duties as superintendent of the Lafayette water-works, and pay

over all moneys that may come into his hands as such superintendent, then this obligation shall be void; else in full force and effect." The bond bears date the 1st day of June, 1876, and was signed by James, principal, and the other obligees as sureties. On June 5th James submitted the bond, and it was approved by the common council of the city. At the time the bond was executed and approved, there was no by-law, resolution, or ordinance, or any other legislation requiring the superintendent of water-works or James to give any bond whatever. At the same session at which the bond was approved, the common council adopted "rules and regulations for the government and protection of the Lafayette water-works, together with the tariff of water rates."

Sections 2 and 3 are as follows:

"Sec. 2. There shall be appointed one man who shall be the general executive officer or superintendent of the water-works, and he shall give bond in the sum of two thousand dollars, conditioned for the faithful discharge of his duty. It shall be the duty of said superintendent to see that the by-laws and resolutions of the common council are executed; that the conditions of all contracts by or with said works are faithfully complied with; that the assessment of water rents are duly made, collected, and paid into the city treasury; to credit all accounts and claims, and submit the same to the common council, with such explanations as to enable them to act advisedly thereon; and to have a general supervision over all the operations and interests of said works; and keep the council informed as to the condition of the works, with such suggestions as he may deem necessary for the interests of the same; and make monthly, quarterly, semi-annual, and annual reports of the condition and operation of said water-works, with such other duties as the common council may prescribe.

"Sec. 3. Said superintendent shall also have special supervision of the reservoir, reservoir grounds, and lake thereon; to see that no depredations or misdemeanors are committed, either on the grounds, reservoir or lake."

City of Lafayette v. James et al.

Other sections prescribe additional duties of the superintendent.

After the adoption of these rules and regulations, the common council did not elect a superintendent, nor did they reelect James, nor require a new bond of him. From that time forward, until in 1879, he acted as such superintendent under his election, collected water rents, and failed to pay over to the city $1,533.70.

Are his sureties liable on the bond for the water rents thus collected and not paid over? That is the question for decision.

The power to construct the water-works, at the time they were constructed, was given by section 53 of the act of March, 1867, 1 R. S. 1876, p. 291. There was nothing in that act, nor in any act subsequent, and prior to the appointment of James, providing for the appointment of a superintendent of water-works as a city officer. James, then, was not an officer of the city, nor was his bond an official bond in the sense in which that term is used in section 5528, R. S. 1881, which provides that official bonds shall be obligatory upon the sureties for the faithful discharge of additional duties imposed upon the principal by law. The common council, we think, had the right to employ James as an agent or superintendent in the management of the water-works, and to accept the bond from him, as was done. That bond, we think, is obligatory upon the sureties, for all non-feasance and malfeasance of James in the discharge of the duties which devolved upon him by his appointment as superintendent. The important questions to settle are, what were those duties? Did the common council, by the adoption of the rules and regulations, add other and different duties? If so, are the sureties upon the bond liable for the defalcation of James while discharging those duties?

The law is too well settled to admit of discussion, that sureties are favorites of the law, and are not bound beyond the strict terms of the engagement; that their liability is not to be extended by implication beyond the terms of their con-

tract, which contract is said to be *strictissimi juris*. *Markland, etc., Co.* v. *Kimmel,* 87 Ind. 560, and cases cited. See, also, the following, cited by counsel for appellee: *Stull* v. *Hance,* 62 Ill. 52; *Lang* v. *Pike,* 27 Ohio St. 498; *Ludlow* v. *Simond,* 2 Cai. Cas. 1; *United States* v. *Boyd,* 15 Peters, 187; *McCluskey* v. *Cromwell,* 11 N. Y. 593; *Noyes* v. *Granger,* 51 Iowa, 227; *Holmes Savings-Bank* v. *Traube,* 6 Mo. Ap. 221; *Pybus* v. *Gibb,* 38 Eng. L. & Eq. 57.

As we have said, at the time James was appointed and his bond approved, the common council had in no way fixed the duties of the superintendent of the water-works. Up to the time when the rules and regulations were adopted, the duties of James were such only as may be implied from the word superintendent as used in the resolution for and in the election of James and in the bond. At that time, the common council had the management and control of the finances of the city, and the law designated no one as the fiscal agent of the city in the collection of demands due it, except the city treasurer. It can not be said with reason, that in the election of James as superintendent of the water-works, the right and duty of collecting the water rents were given and imposed upon him, and thus, inferentially at least, taken away from the city treasurer. Suppose that the rules and regulations had never been passed, and James had neglected to collect the water rents, could he or his sureties have been held liable in any manner for such neglect? A statement of such a proposition, it seems to us, is a sufficient answer in the negative. And if they would not be so liable, it is because James owed no such duty as such superintendent.

A superintendent is defined by the lexicographers to be " one who superintends, a director, an overseer, as a superintendent of police, of buildings, harbors, railway works, machinery," etc. Worcester's Dictionary. There is nothing in the definition of the word superintendent in the common use of it, nor in the use of it in the resolution, for the election of James, from which it may be inferred that there was any

thought on the part of the common council, himself, or his bondsmen, that he was to become the financial agent of the city in the collection of the revenues from the water-works. True, there is an undertaking in the bond that James should pay over all moneys that might come into his hands as such superintendent, but this undertaking neither defines, fixes, limits, nor enlarges his duties. The bond is simply an undertaking that he should perform the duties of his employment, as already fixed at the time of and prior to the execution of the bond. This being so, it is not necessary to speculate as to what moneys, other than water rents, came into his hands as such superintendent. Possibly, none at all. Possibly, he might be entrusted with money for the payment of repairs, or supplies in the management of the works, for which the sureties would be liable. However this may be, it is quite clear, that, under his employment as such superintendent, it was not his right or duty to act as the fiscal agent of the city in the collection of water rents, and that the undertaking in the bond did not enlarge his duties, nor extend the liability of the sureties, beyond the duties of the employment.

As we have already said, after the election of James, and the approval of the bond in suit, the common council adopted the rules and regulations. Without a re-election, and without a new bond, James continued to act as superintendent, and from that time forth collected the water rents. · It is assumed that the rules and regulations imposed upon the superintendent of water-works, and upon James as such superintendent, the duty of collecting and accounting for such rents.

If that be so, we are quite clear, in our opinion, that the sureties are not liable for any defalcation growing out of such collection. The collection of such rents was not included in the original engagement and undertaking. It is not only an additional duty, but a duty of an entirely different character. The sureties might have been willing to answer for the non-feasance or malfeasance of James as a superintendent of the water-works, in the discharge of the duties

as fixed and understood when the bond was executed, but entirely unwilling to answer for possible defalcation in the handling of large sums of money. They may have had faith. in him as a superintendent in the proper sense of that term, but no faith at all in his capability or trustworthiness in the collection and handling of water rents. We think that the additional and different duty of collecting water rents, and the additional peril to the sureties incident thereto, are beyond the engagement of the sureties, and that hence they are not liable for the defalcation.

As fully sustaining us in this conclusion, and as illustrations of the application of the doctrine in different cases, we cite, in addition to the cases already cited, the following: *People* v. *Pennock,* 60 N. Y. 421; *Manufacturers' Nat'l Bank* v. *Dickerson,* 41 N. J. L. 448 (32 Am. R. 237); *White Sewing Machine Co.* v. *Mullins,* 41 Mich. 339; *Mumford* v. *M. & C. R. R. Co.,* 31 Am. R. 616.

There was no error therefore in sustaining the demurrer to the first paragraph of the complaint, and overruling the motion for a new trial, as to the sureties. As to James, there is no reason for a new trial, as the city recovered a judgment against him for the amount agreed to be due. Nor is there any ground for a new trial as to McCarthy, as it was agreed, upon the trial, that after the execution of the bond he had been discharged in bankruptcy.

There being no error in the record, the judgment is affirmed, with costs.

Filed Dec. 20, 1883.