Filed March 30, 1887.

* * * * * *

No. 11,832.

## The Weir Plow Company v. Walmsley et al.

PRINCIPAL AND SURETY.—*Liability of Surety.*—*Terms of Contract.*—*Interpretation.*—A surety is not bound beyond the terms of his contract, reasonably interpreted.

SAME.—*Material Alteration.*—A material alteration, although favorable to the surety, will release him from liability upon the contract.

SAME.—*Surety for Performance of Contract to Sell Goods on Commission.*—

The Weir Plow Company v. Walmsley et al.

*Extension of Liability.*—Where one contracts to sell, on commission, goods which are to be shipped to him as ordered, and to account for money received and to guarantee the payment of all notes taken where sales are made on time, a surety for the performance of the contract is not liable for a default respecting goods purchased by his principal, and in his possession, prior to the execution of the contract, and which are without his knowledge, by a subsequent agreement between the principal and the obligee, sold as furnished under the contract.

SAME.—*Alteration of Contract.*—*Release of Surety.*—Where, in such a case, subsequent to the execution of the contract and without the consent of the surety, the obligee inserts therein the provision that all goods specified in the contract and attached price-list have been delivered to the principal obligor, and are acknowledged as being in his possession, and the further provision that the payment for all goods ordered by the principal are guaranteed by the surety, the alterations are material and release the surety.

PRACTICE.—*Appeal.*—*Stenographer.*—*Long-Hand Manuscript of Evidence.*— *Bill of Exceptions.*—In order to make the long-hand manuscript of the evidence taken by a stenographer a part of the record on appeal to the Supreme Court, it must be incorporated in a bill of exceptions.

SUPREME COURT.—*Instructions.*—*Evidence.*—*Presumption.*—*Practice.*—Where the evidence is not in the record, the judgment will not be reversed on account of instructions given, if, upon any state of the evidence which might properly have been before the jury, they would have been correct, it being presumed in such case that they were applicable.

From the Vigo Superior Court.

*W. Eggleston* and *E. Reid*, for appellant.

*I. N. Pierce*, for appellees.

ZOLLARS, J.—Appellant bases its action upon a written contract.

Although signed by appellant and the appellees, Walmsley and Carithers, the contract upon its face shows that the real contracting parties were appellant and Walmsley.

The terms of the contract, so far as they need to be here set out, are, that appellant agreed to " manufacture and furnish " farming implements to Walmsley, to be sold by him on commission, the kind of implements, the price of the same, and the commission to be allowed to Walmsley being stated. " Said goods to be delivered on board cars at Indianapolis,

·on or about, when ordered, 1881." The undertakings on the part of Walmsley were, that he would receive, pay freight, store in good order, sell as far as possible for cash at the price-list, and when sales could not be made for cash, in no case to extend the time of payment of notes beyond the 1st day of October, 1881, and to deliver no goods until settled for; that he would take, and turn over to appellant, interest-bearing notes, payable to it, upon blanks furnished by it, and require a property statement on the back of the notes by the purchasers, that they were worth $2,000 above debts; that he would remit to appellant the full proceeds of cash sales, and notes, on Monday of each week, first endorsing each and every note, using the following form: "For value received we hereby guarantee the payment of this note at maturity, or any time thereafter, waiving protest, demand, and notice of non-payment thereof;" that final settlement should be made with appellant on the 1st day of July, 1881, or at such other time as it might require; that if any notes should remain un-paid for ninety days after maturity, they should be taken up and paid by Walmsley; that the contract itself should be a full guarantee on his part of the payment of the notes turned over to appellant, and that a failure to endorse the notes should not affect such guarantee; that Walmsley would use all proper diligence to sell the implements ordered, and that in case of failure or neglect to sell all of said implements by the 1st day of July, 1881, he would settle for those remain-ing unsold, by giving "their" notes, payable to appellant or order on the 1st day of October, 1881.

By other stipulations in the contract, appellant granted to Walmsley the right to sell said implements in Vigo county, Indiana, during the spring trade, and he agreed to sell those implements in preference to others of similar kind.

After stating the terms of the contract, it is alleged in the complaint, that prior to making the contract, Walmsley had been acting as agent of appellant, and as such had on hand a large amount of agricultural implements, which by agreement

were turned over to him by appellant, and were included in the contract; that appellant has complied with all the terms of the contract; that appellees have not complied with the terms of the contract on their part, in that they have received from time to time from appellant, since the execution of the contract, until the latter part of the year 1881, large amounts of agricultural implements, and sold a large part of such implements to divers persons, partly for cash and partly on time, and taken and turned over notes payable to appellant; that appellees failed to endorse said notes or take them up and pay them, and that they have been due for more than ninety days; that Walmsley failed to remit to appellant the cash received on sales of the implements in accordance with the terms of the contract, but, on the contrary, converted to his own use $1,500 of the money so received on cash sales. Judgment is asked for the amount of the money so converted, and for the amount of the unpaid notes, a list of which is given in the complaint.

Walmsley made default. Carithers filed an answer in three paragraphs, and a cross complaint. A demurrer by appellant to the cross complaint and to the third paragraph of the answer was overruled by the court below. Those rulings are assigned as error.

So far as material here, it is averred in the third paragraph of the answer, that Carithers, with the knowledge of appellant, executed the contract filed with the complaint, as surety for Walmsley and in no other capacity; that prior to the execution of the contract, Walmsley had purchased from appellant a thousand dollars' worth of farming implements, of the kind and quality mentioned in the contract, which were in his possession at the time the contract was made, of which fact Carithers was ignorant at the time he executed the contract; that subsequent to the execution of the contract, and without the knowledge or consent of Carithers, appellant and Walmsley agreed that the said implements, so in his possession, should be taken and received by him under

the contract, as the implements to be manufactured and furnished on board the cars at Indianapolis, as stated in the contract, and that they were so taken and sold by Walmsley; that for the purpose of making the contract cover and include such implements, so had on hand by Walmsley, they wrongfully inserted in said contract the following: "All goods specified in this contract and in price-list attached, have been delivered to the party of the second part (Walmsley), and are hereby acknowledged as being in the possession of said party of the second part;" that in pursuance of said arrangement, Walmsley received said implements and sold them under the contract without the knowledge of Carithers.

"Nothing," says Judge STORY, "can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. It is not sufficient, that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal." *Miller* v. *Stewart*, 9 Wheat. 680. Such has always been the doctrine of this court. *Judah* v. *Zimmerman*, 22 Ind. 388; *Markland, etc., Co.* v. *Kimmel*, 87 Ind. 560; *City of Lafayette* v. *James*, 92 Ind. 240 (47 Am. R. 140); *Weed S. M. Co.* v. *Winchel*, 107 Ind. 260.

It is also a rule, well settled, that the contract of the surety must be given a reasonable interpretation, in accordance with the established rules of construction. *Irwin* v. *Kilburn*, 104 Ind. 113.

As will be noticed from the abstract of the complaint above given, appellant seeks to recover a judgment against appellees for an amount of money which it is alleged Walmsley collected upon cash sales of implements, and failed to remit, and for the amount of notes which he had taken upon

the sales of such implements, and turned over to appellant, and which were not paid by the makers.

Against these demands, appellee Carithers interposes the defence, as will also be observed from the abstract of the answer above given, that at the time he executed the contract as surety for Walmsley, he, Walmsley, had on hand a thousand dollars' worth of implements, of the kind and quality mentioned in the contract, which he had, prior to that time, purchased of appellant; that he, Carithers, was not aware of that fact at the time he executed the contract; and that subsequent to the execution of the contract, and without his consent or knowledge, the implements so purchased and in the possession of, Walmsley were, by an agreement between him and appellant, sold by Walmsley as implements furnished under the contract. These averments in the answer are, by the demurrer, admitted to be true.

The contract in suit, manifestly, had reference to implements to be furnished by appellant to Walmsley in the future, to be sold by him on commission. The undertaking on the part of Carithers was, that as to such implements, Walmsley should perform the conditions of the contract, by remitting the cash received upon sales, by turning over the notes received on such sales, by paying them, if not paid by the makers within the fixed time, and by settling by note for implements unsold on the 1st day of July, 1881.

According to the answer, the contract was subsequently extended by appellant and Walmsley, so as to cover a thousand dollars' worth of implements which Walmsley had previously purchased from appellant. To hold Carithers liable upon the contract, as thus extended, would be to enable appellant to get security for a debt which Walmsley owed it at the time the contract was made, and to hold Carithers as surety for that debt. It would be to hold Carithers liable as surety, not only for what implements might be furnished by appellant to Walmsley subsequent to the execution of the contract, but also for implements which had been sold to him

by appellant prior to that time.   That was not Carithers'
contract.

According to the answer, therefore, appellant is seeking to
hold Carithers upon a transaction which grew out of a con-
tract different from that made by him.   That can not be done..
In our judgment the answer is sufficient.   Having reached
this conclusion, we need not notice other features of the an-
swer discussed by counsel.   In addition to the authorities.
above cited, see Brandt Suretyship, sections 337, 338, 339,.
342, 343, 345; *Ham* v. *Greve*, 34 Ind. 18; *Johnston* v. *May,.*
76 Ind. 293; 2 White & Tudor Leading Cases in Equity, p..
1873; Baylies Sureties, pp. 260, 267, 268, 294; *Zimmerman*
v. *Judah*, 13 Ind. 286 ; *Stone* v. *Compton*, 5 Bingham's New
Cases, 142.

The substance of the cross complaint by Carithers is, that
with the knowledge of appellant, he executed the contract as
surety for Walmsley, and in no other capacity ; that after the
execution of the contract, appellant, without his consent or
knowledge, permitted and allowed Walmsley to receive, buy
and sell, the implements and farming utensils mentioned in
said contract, and under the same, long after the same had
expired by the terms of limitation therein ; that without
Carithers' consent or knowledge, and subsequent to the exe-
cution of the contract, appellant inserted in the contract the
words " all goods specified in this contract, and in price-
list attached, have been delivered to the party of the second
part (Walmsley), and are hereby acknowledged as being in
the possession of said party of the second part;" also, " the
payment for all goods ordered by W. F. Walmsley from the
contract or price-list, is hereby guaranteed by J. H. Car-
ithers."

It is thus averred that the above was inserted in the con-
tract.   That is admitted by the demurrer.   We can not look
beyond the cross complaint and the admission by the demur-
rer, to the copy of the contract filed with the complaint, to
ascertain whether the matter alleged to have been inserted in

the contract was in fact so inserted, or whether it was written on the margin of the contract, and beneath the signatures of the parties.

The question then is, was the contract so altered by the insertion of the matter as to release the surety? In other words, was there a material alteration of the contract as to Carithers,, the surety? We think that the alteration made, as in the cross complaint alleged, was a material one as to Carithers..

As originally made, the contract was one for the furnishing of farming implements to Walmsley, as they might be ordered by him.

In a suit upon that contract, the burden would have been upon appellant to prove, by whatever evidence it might have,, that an amount of such implements had been delivered. As. changed, the contract itself would furnish absolute proof that " all goods specified in the contract and price-list " have been delivered to Walmsley. The contract as changed is thus. made to furnish absolute proof against the surety. To such a contract he did not give his assent. He did not enter into such a contract. And so, as originally made, the contract did not contain the stipulation that "payment for all goods. ordered by W. F. Walmsley * * * is hereby guaranteed by Jas. H. Carithers." The insertion of that stipulation made the contract materially different from what it was originally written.

It is true that Carithers now alleges that he was, in fact, surety for Walmsley, but that makes no difference.

A material alteration, although favorable to the surety complaining, will yet release him from liability upon the contract..

It was for Carithers to say whether or not his relation to the contracting parties should be fixed by the terms of the contract. It was for him to say whether, by the terms of the contract, his relation should be definitely fixed as guar-- antor for the payment of all goods that might be ordered by Walmsley.

No one had the right to insert such a stipulation without

his consent or knowledge. The insertion of that stipulation destroyed the identity of the contract, as signed by him. See *Franklin Life Ins. Co.* v. *Courtney,* 60 Ind. 134.

Having concluded that the cross complaint is good on the ground that it rests upon a material alteration of the contract, we need not consider the allegation that goods were furnished to Walmsley subsequent to the limit fixed in the contract.

It is further contended by appellant, that the verdict and judgment in favor of appellee are not sustained by sufficient evidence.

That contention is met by appellee Carithers with the contention on his part that the evidence is not in the record, and that, therefore, no question can be made as to its sufficiency. This latter contention can not be disregarded. There is inserted in the transcript what appears to be a long-hand manuscript of evidence furnished by a stenographer. The evidence, as thus furnished, appears to have been filed on the 3d day of July, 1884, but it was not incorporated into a bill of exceptions. The only bill of exceptions in the record is one filed on the 26th day of June, 1884. That bill embraces the instructions given and refused, and nothing more. It has been held many times, that in order to make the long-hand manuscript of the evidence taken by a stenographer a part of the record on appeal to this court, it must be incorporated into a bill of exceptions. *Marshall* v. *State, ex rel.,* 107 Ind. 173.

A large portion of one of the briefs filed by counsel for appellant is devoted to the alleged errors of the court in refusing instructions asked by appellant, and in giving others.

We have examined each of the instructions asked by appellant. We can not say, without the evidence, that the court erred in refusing the first, second and eleventh so asked. They may have been refused because they were not applicable to the evidence. *Freeze* v. *DePuy,* 57 Ind. 188; *Stout* v.

*Stout,* 77 Ind. 537 ; *McCalment* v. *State,* 77 Ind. 250; *Powers* v. *State,* 87 Ind. 144 (155).

The sixth instruction so asked was that Carithers could not show that he was surety for Walmsley, etc. That was properly refused, because it was not a correct statement of the law as applied to the contract in suit.

We have also examined the instructions given by the court. Here again, we can not, without the evidence, say that the court erred. It is well settled that where the evidence is not in the record, the judgment will not be reversed on account of instructions given, if, upon any state of the evidence which might properly have been before the jury, the instructions would have been correct. In such a case, it will be presumed that the instructions were applicable to the evidence. *Elkhart, etc., Ass'n* v. *Houghton,* 103 Ind. 286 (53 Am. R. 514), and cases there cited; *North Western Mut. Life Ins. Co.* v. *Heimann,* 93 Ind. 24, and cases there cited.

It would not be profitable to extend this opinion to set out in full the instructions given by the court, or to give an abstract of them. We have not discovered any abstract proposition of law erroneously stated as against appellant in any of them. Nor have we discovered in the record, as it comes before us, any error that would justify this court in overthrowing the judgment.

Judgment affirmed, with costs.

