CROUCH AND SON ET AL. v. PARKER.

[No. 23,604. Filed December 17, 1919.]

1. APPEAL.—Overruling Demurrer.—Harmless Error.—Where the court specially instructed the jury to consider only the third and fourth paragraphs of the defendant's answer, there was no available error in overruling the plaintiff's demurrer to the second paragraph of answer. p. 663.

2. CONTRACTS.—Sale and Warranty.—A contract for the sale of a chattel and a warranty thereof which are executed at the same time constitute one contract. pp. 663, 666.

3. PRINCIPAL AND SURETY.—Liability of Surety.—Extent.— Sureties not for hire are never held responsible beyond the clear and absolute terms and meaning of their undertakings, and presumptions or equities are never allowed to enlarge or to change in any degree their legal obligations. pp. 666, 669.

4. PRINCIPAL AND SURETY.—Change of Contract.—Release of Surety.—Where notes were executed for the purchase price of a stallion which was warranted as a sure breeder, and the dates of maturity were so arranged that the breeding test

could be completed before any note became due, an agreement by which an unpaid balance of one note was canceled and the plaintiff's payees were relieved from all liability on the warranty, without knowledge or consent of the surety, released the surety.  p. 669.

5.  APPEAL.—*Overruling Demurrer.—Harmless Error.*—Where no judgment was rendered against the plaintiffs on the defendant's cross-complaint, the overruling of a demurrer to a paragraph thereof presents no available error.  p. 670.

From Johnson Circuit Court; *Hugh L. Wickens,* Special Judge.

Action by Jeptha Crouch and others against Hanna Parker and Robert H. Parker on a note.  From a judgment against Robert H. Parker, and in favor of Hanna Parker, the plaintiffs appeal.  (Transferred from the Appellate Court under §1399 Burns 1914, Acts 1901 p. 565).  *Affirmed.*

*DeWitt C. Wilson* and *White & Owens,* for appellants.
*William Featherngill* and *Ivory J. Drybread,* for appellee.

WILLOUGHBY, J.—On December 29, 1908, Crouch and Son, appellants, sold and delivered to Robert H. Parker, also named as appellant, a certain stallion at the agreed price of $1,950, for which sum the said Robert H. Parker and his mother, Hannah Parker, appellee, executed their three several promissory notes each calling for $650 and interest.  As a part of the contract of sale, and contemporaneously with the execution and delivery of said notes, the said Crouch and Son, hereinafter designated as appellants, executed and delivered to said Robert H. Parker their written contract, by which they warranted said stallion to be a "satisfactory sure breeder," and agreed that if said horse should not be as warranted, they would, on or before April 1, 1910, take him back, if delivered to them at Lafayette, Indiana, and give in exchange another stallion of equal value and of the same breed.

The horse did not prove to be as warranted, and appellants were so notified prior to April 1, 1910, whereupon appellants, without the knowledge or consent of appellee, extended said warranty for a period of one year, at the expiration of which time, and on April 13, 1911, appellants entered into a new agreement with Robert H. Parker, by the terms of which appellants surrendered to said Parker the note due April 1, 1910, on which there was a balance due in the sum of $324.34, and said Robert H. Parker released said appellants from all liability on said warranty. Thereafter the last of the three $650 notes became due, was unpaid, and this action was begun by appellants against Robert H. Parker and appellee to collect said note. Appellee filed four affirmative paragraphs of answer designated as the second, third, fourth and fifth paragraphs, also, a cross-complaint against appellants. Separate demurrers for want of facts were filed to these answers and to the cross-complaint, which demurrers were overruled, except the demurrer to the fifth paragraph of answer, which was sustained. Appellants' reply in denial to the several paragraphs of answer, and their answer in denial to the cross-complaint, closed the issues, and the cause was submitted to a jury, resulting in a verdict and judgment against Robert H. Parker for the full amount of the note, and a verdict in favor of appellee. Appellants' motion for a new trial was overruled. The errors relied on for reversal are: (1) The rulings of the court on the demurrers to the three affirmative paragraphs of answer and the ruling of the court on the demurrer to the third paragraph of the cross-complaint of appellee; and (2) the overruling of the motion for a new trial.

The court having specially instructed the jury that in their deliberations they should consider only the third

and fourth paragraphs of appellee's answer, there is no available error in the action of the court in overruling appellants' demurrer to the second paragraph of answer. *Life Assurance Co.* v. *Haughton* (1903), 31 Ind. App. 626, 628, 67 N. E. 950.

The third and fourth paragraphs of answer each aver that the note sued on and the warranty given by appellants were contemporaneously executed and delivered; that the execution and delivery of the warranty was a consideration for appellee's execution of the note as surety; that the stallion was not as warranted, and that the extension of the warranty was without her knowledge and consent, as was the new agreement of April 13, 1911. The only objection to these paragraphs of answer which appellants specified in their memorandum to the demurrers thereto is that appellee "had not executed the warranty, was not a party to it, and therefore has no right to base a defense thereon." The question thus presented for our consideration is whether · or not the changes in the original contract, which changes were made by agreement between the principal on the note and the appellants, without the knowledge of appellee, discharged appellee as surety. Appellants concede that if appellee had been a party named in the warranty, the extension and surrender of that instrument without her consent would have released her from liability on the note; but they contend that, inasmuch as her name does not appear in the warranty, she is not released.

A contract of sale and the warranty of the chattel sold, executed at the same time, constitute one contract. *LaGrange* v. *Coyle* (1911), 50 Ind. App. 140, 98 N. E. 75; *McCarty* v. *Williams* (1914), 58 Ind. App. 440, 108 N. E. 370; *Shordan* v. *Kyler* (1882), 87 Ind. 38, 41.

In *Allen* v. *Nofsinger* (1859), 13 Ind. 494, it is held that a promissory note, and the contract in writing out of which it arises, if both are executed at the same time, constitute but one agreement. In *Cunningham* v. *Gwinn* (1837), 4 Blackf. 341, it is held that, if a title bond be executed in such case bearing the same date with the note, they constitute one contract, and the note is subject to the same defense as if it showed, on its face, the consideration for which it was given. In *Wood* v. *Ridgeville College* (1888), 114 Ind. 320, 16 N. E. 619, it is held that when, at the time a promissory note was executed to a college for a scholarship therein, a certificate of scholarship was issued to the maker, to which was appended an agreement that the note was to be returned if $10,000 worth of scholarships were not sold within a given time, the note and the agreement constitute one contract. In *Woodward* v. *Mathews* (1860), 15 Ind. 339, it is held that a written contemporaneous agreement, showing the consideration and conditions upon which a promissory note was given, may, in a suit upon the note, be given in evidence as part of the same contract. In *McDonald* v. *Huestis* (1890), 1 Ind. App. 275, 27 N. E. 509, it is held that an agreement in writing, executed at the same time a promissory note is executed, with reference thereto, becomes a part of the contract, and it and the note must be construed together in ascertaining the liability of the maker of such note and his surety. In *Rosenthal* v. *Rambo* (1905), 165 Ind. 584, 76 N. E. 404, 3 L. R. A. (N. S.) 678, the court, in construing a contract similar to the one at bar, said that the promise to pay the notes was based on the corresponding promise of Crouch and Son to make good the horse as a satisfactory breeder, and the duty to pay, in whole or in part, remained inchoate during the breeding test, and until performance or default by the sellers. So blended were the transactions that no assignment

of the notes, which carried upon their face notice of probable or possible defenses, could separate these equities from the terms of the contract. The case of *Hickman* v. *Rayl* (1877), 55 Ind. 551, was an action founded on a promissory note, and an answer to the complaint alleges that the note was executed by the defendant Silas Hickman, as principal, and by the defendant George W. Hickman, as surety for the said Silas, in consideration of the rent of a farm owned by the plaintiff, which he rented to the defendant Silas Hickman by articles of agreement made between the said plaintiff and said Silas, on the same day the note was executed, and as a part of the same agreement, by which articles the plaintiff, in consideration of the obligation of the defendant Silas, thereinafter named, agreed to rent to the said Silas the farm then owned by the plaintiff; that the note was given for the rent of the place. It is further alleged in the answer that plaintiff never delivered the premises to the said Silas Hickman as provided for in the contract. The court in that case said that the making of the note sued on and the execution of the agreement set up in the answer were simultaneous acts, done by the same parties, about the same subject-matter; the note and the agreement, therefore, belong to the same transaction, and, taken together, constitute but one contract, as much as if they were written on the same piece of paper. In the case of *Zimmerman* v. *Judah* (1859), 13 Ind. 286, which was a suit by the appellee against the appellant on a promissory note, it appears by the answer of defendant, appellant, that at the same time that the note sued on was executed, Judah and Brown entered into a contract, by which Brown was to erect for Judah a certain building, to be wholly completed ready for occupancy by November 1, 1856. The agreement fixes the amount to be paid, the time of payment, etc. The last clause of the agreement is as follows:

"5th. As to the balance, 2,000 dollars, it is agreed as follows: Said *Judah* herewith advances to said *Brown,* as and for a loan on a note payable one day after date, the said sum of 2,000 dollars, which note shall be satisfied by the completion of said building as in this contract is provided; and which note, also, shall not become or be payable so long as said *Brown* shall progress with the preparation of materials, and with the erection of said building, so as to warrant the said superintendent in the reasonable expectation of the progress and completion of the work, as is hereinbefore provided."

Dated October 13, 1855, which is the same date as the note, and signed by Brown, Zimmerman and Judah. The answer further shows that on June 5, 1856, the following further agreement was made without the knowledge or consent of Zimmerman, by which said Brown and one Stokes should, by November 1, 1856, put an additional story on the building then under contract between Brown and Judah, for the further consideration of $1,700, to be paid on the completion thereof. It was held that the second contract was such an alteration of the original agreement that it discharged Zimmerman, the surety. *Miller* v. *Stewart* (1824), 22 U. S. (9 Wheat.) 680, 6 L. Ed. 189, holds that the contract of the surety is to be strictly construed, and is not to be extended beyond the scope of its terms.

Under the facts shown by the undisputed evidence in the instant case, the note sued upon and the written guarantee of appellant constitute the sale con-

2. tract of the horse, and are as much one contract as if all of the writings had been embodied in one instrument.

In *Judah* v. *Zimmerman* (1864), 22 Ind. 388, it is held that any material alteration of a contract, without the consent of the surety, will discharge him.

3. The liability of a surety cannot be extended be-

yond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal. Chitty, Contracts 529; *Miller* v. *Stewart, supra.* In *Campbell* v. *Gates* (1861), 17 Ind. 126, the court says that, ordinarily, a surety is liable to the creditor in the same manner, and to the same extent, as the principal debtor, but as an exception to this rule the surety is allowed to set up in defense any matter which ought, in equity, to go to his personal exoneration. If the contract of suretyship is, as between the creditor and the surety, subject to a condition, the surety is discharged if the condition be not performed. Burge, Suretyship 115, 116. Indeed, we perceive no valid reason why the engagement of the surety, who, as such, executes a written contract, may not be founded upon a consideration variant from that which induces its execution by his principal. And if, as in the case at bar, such consideration be a condition subsequent, to be performed by the creditor, his failure to perform it would evidently operate as a fraud upon the surety, and, upon that ground, release him from all liability upon his engagement. 2 Am. Lead. Cases 262; *Pidcock* v. *Bishop* (1825), 3 B. & C. 605. And it is plainly competent for the surety to set up and prove such failure of consideration, because it has been often adjudged that such defense is not in conflict with the legal effect of the contract. It is a sound and well-settled principle of law that sureties are not to be made liable beyond their contract, and any agreement with the creditor, which varies essentially the terms of the contract, without the assent of the surety, will discharge

him from responsibility. *Sprigg* v. *Bank of Mount Pleasant* (1840), 39 U. S. (14 Pet.) 201, 10 L. Ed. 419. In *Bailey* v. *Boyd* (1881), 75 Ind. 125, it is held that if a creditor holding a composition bond, by an agreement with the debtor, for a valuable consideration, without the knowledge or consent of the surety, materially changes the terms of the contract of indebtedness, he thereby releases the surety. In the *Weir Plow Co.* v. *Walmsley* (1887), 110 Ind. 242, 11 N. E. 232, the court holds that a surety is not bound beyond the terms of his contract, reasonably interpreted. In that case, on page 246, the court said: " 'Nothing,' says Judge Story, 'can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. It is not sufficient, that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal.' *Miller* v. *Stewart,* 9 Wheaton 680. Such has always been the doctrine of this court. *Judah* v. *Zimmerman,* 22 Ind. 388; *Markland, etc., Co.* v. *Kimmel,* 87 Ind. 560; *City of Lafayette* v. *James,* 92 Ind. 240, (47 Am. R. 140) ; *Weed S. M. Co.* v. *Winchel,* 107 Ind. 260." A surety is "a favored debtor." The slightest fraud on the part of the creditor touching the contract annuls it. Any alteration after it is made, though beneficial to the surety, has the same effect. His contract, exactly as made, is the measure of his liability. *Magee* v. *Manhattan Life Ins. Co.* (1875), 92 U. S. 93, 23 L. Ed. 699.

In *Jeffries* v. *Lamb* (1880), 73 Ind. 202, the court holds that, where the payee of a note induces another to become surety thereon, by agreeing that he would

deliver to the maker a previous note and chattel mortgage for cancellation, so that such surety might indemnify himself by obtaining a first mortgage on the property mortgaged, a failure and refusal to comply with such agreement constitute a failure of consideration as between such payee and surety.

In *Trentman* v. *Fletcher* (1885), 100 Ind. 105, 109, the court said that, where a surety signs a note in consideration of an agreement with the payee that the latter should do something in the future, if the agreement is sufficiently certain and of such a character that the surety has a right to rely on its performance, and such agreement is not a contradiction of the note, or some of its terms, we perceive no reason why a failure on the part of the payee to perform should not be held a failure of the consideration as between the payee and surety.

In judging of the character or sufficiency of the defense of the appellee, there should be taken as a guide the rule, which is perhaps without an exception, that sureties not for hire are never held responsible beyond the clear and absolute terms and meaning of their undertakings. Presumptions or equities are never allowed to enlarge or in any degree to change their legal obligations. This rule is thus forcibly put by Chancellor Kent in the 3rd Commentaries, p. 124, where he said: " 'When the contract of a guarantor or surety is duly ascertained and understood by a fair and liberal construction of the instrument, the principle is well settled, that the case must be brought strictly within the terms of the guaranty, and the liability of the surety cannot be extended by implication.' " *Leggett* v. *Humphreys* (1858), 62 U. S. (21 How.) 66.

The case at bar was a suit by the payees of the note against the makers. No equities of third parties have intervened. The contract of the appellee was one of surety for the purchase price of the horse.

She was induced to enter into the contract of suretyship by the warranty of the appellants, which was read to her by appellants' agent before she signed the note sued on. The maturities of the notes were so arranged that the breeding test could be completed before any note became due. At or about the time the first note became due, the original contract was, without the knowledge or consent of appellee, changed in this: that on April 1, 1910, the warranty was extended for one year, and that on April 13, 1911, the note due April 10, 1910, on which there was at that time an unpaid balance of $324.34, was canceled by appellants Crouch and Crouch, and appellants were released from all liability on the warranty. Any agreement or dealing between the creditor and principal which materially varies the terms of the contract by which the surety is to be bound, without the consent of the surety, will release the surety from his obligation. *Bailey* v. *Boyd* (1881), 75 Ind. 125; *Weed Sewing Machine Co.* v. *Winchel* (1886), 107 Ind. 260, 7 N. E. 881; *Post, Admr.,* v. *Losey* (1887), 111 Ind. 74, 12 N. E. 121, 60 Am. Rep. 677; *Weir Plow Co.* v. *Walmsley* (1887), 110 Ind. 242, 11 N. E. 232; *County of Glenn* v. *Jones* (1905), 146 Cal. 518, 80 Pac. 695, 2 Ann. Cas. 764.

The court did not err in overruling the demurrers to the third and fourth paragraphs of answer.

No judgment was rendered against appellants on the cross-complaint of appellee. Therefore, the overruling of the demurrer to the third paragraph thereof presents no available error. *Winnemucca Water, etc., Co.* v. *Model Gas Engine Works* (1913), 179 Ind. 542, 544, 101 N. E. 1007; *Royse* v. *Turnbaugh* (1889), 117 Ind. 539, 20 N. E. 485.

The appellants claim that instruction No. 2 required the plaintiff to prove the execution of the note in suit; that instruction No. 3 does not correctly state the ma-

terial averments of each of the third and fourth paragraphs of answer; and that instruction No. 3 embodies a wrong conception of the law.

These instructions are not subject to the infirmities claimed by appellants. The instructions, taken as a whole, state the law of the case correctly, and the verdict is sustained by sufficient evidence. No error appearing in the record, the judgment is affirmed.

NOTE.—Reported in 125 N. E. 453.