## MANUFACTURERS' BANK *versus* COLE.

Upon a promissory note made payable to the president, directors and company of a bank, or their order, which was never discounted or negotiated by the bank, but which was sold by the principal to a third person, no action can be maintained by the holder against the *surety* thereon, although the bank authorize a suit to be prosecuted in their name.

ON REPORT from *Nisi Prius*, RICE, J., presiding.

ASSUMPSIT, to recover the amount of a note of hand of $100, on four months, signed by one Greenleaf as principal, and the defendant as surety, payable to the plaintiff bank or order.

The principal applied to the defendant to sign a note with him to the bank for $75, to raise money, with which to purchase lumber. Greenleaf being indebted to defendant and his partner, he proposed to make the note for $100, and that $25 of it should be paid towards the store debt against Greenleaf, which was agreed to.

Greenleaf owed one Albert A. Day $22, and on the day of the date of the note carried it to him, saying that he wished to get the money on it, and to pay his bill, and that he could not get into the bank. Day deducted the amount of his bill, paid him the balance in money, and took the note.

Greenleaf had presented the note to the bank for discount which had been refused. After Greenleaf failed, the defendant called at the bank to see if the note was there, and not finding it, requested them not to take such a note.

The bank never had any interest in the note, but at the request of the counsel for Day, voted to authorize him to prosecute a suit, in the name of the bank, on said note.

It was agreed, that the Court might enter such judgment as the rights of the parties required.

*Goodwin,* with whom was *J. Shepley,* for defendant, cited *Woodford & ux.* v. *Darwin,* 3 Verm. 82; Chitty on Bills, 187, note 1; *Chamberlain* v. *Hoff,* 8 Verm. 94; *Camp* v. *Tompkins,* 9 Conn. 545; *Bennett* v. *Pownell,* 1 Camp. 130

and note; *Adams Bank* v. *Jones*, 16 Pick. 574; *Allen & al.* v. *Ayer & al.* 3 Pick. 298; *Starrett* v. *Barber*, 20 Maine, 457; 3 U. S. Dig. 278, § 558; *Bank Chenango* v. *Hyde*, 4 Cowen. 567.

*Eastman & Leland*, for plaintiff. Upon whom the loss should fall in this case, the principal having failed, they cited *Lickbarrow* v. *Mason*, 2 Term R. 63. That the action was maintainable, they also cited *Bradford* v. *Buckman*, 3 Fairf. 15; *Harriman* v. *Hill*, 14 Maine, 127; *Starrett* v. *Barber*, 20 Maine, 457; *Lime Rock Bank* v. *Macomber*, 29 Maine, 564; *Cross* v. *Rowe & als.*, 2 Fos. 77; *Elliott* v. *Abbott*, 12 N. H. 549; *Bank of Chenango* v. *Hyde*, 4 Cowen, 567; *Powell* v. *Waters*, 17 John. 176; *Thompson* v. *Armstrong*, 5 Ala. 383; *Com. Bank* v. *Claibourne*, 5 Howard, 301; *Trible* v. *Bank of Grenada*, 2 Smedes & Mar. 523.

RICE, J. — It is contended by the counsel for the plaintiff, that the note in suit was made for the purpose of raising money, and therefore it is immaterial to the defendant, who is surety thereon, of whom the money was obtained; to whom the note was delivered, or in whose name the action is brought, or whether the plaintiff now has, or has ever had any legal or equitable interest therein.

To sustain this position reliance is placed upon that principle of law which authorizes an assignee to use the name of his assignor, when it is necessary to enforce equitable rights which would otherwise be lost.

Cases are cited by the plaintiff, to show that the principle is applicable to the case at bar. Some of these cases will be noticed.

The case of *Harriman* v. *Hill*, 14 Maine, 127, was sustained by the Court, upon the ground that the plaintiff in interest, was the assignee of the nominal plaintiff, and though the note then in suit was taken, perhaps unnecessarily, in the name of the nominal plaintiff, by an officer in adjusting the demand which had been originally assigned, yet as the proceeding was in good faith, and not prejudicial

to the just rights of the defendant, the Court held, that the nominal plaintiff, whose rights were not endangered, should not interfere to the destruction of the equitable rights of his assignee.

In *Starrett* v. *Barber & al.*, 20 Maine, 456, which was an action in the name of Starrett, the payee of the note, for the benefit of one Davis, to whom it had been negotiated, the jury were instructed that if it was the understanding between Barber and the sureties, at the time of the making of the note, that it was to be thrown into the market, and used generally for the purpose of raising money, Barber had a right to dispose of it as he chose, and the parties would be bound. Under these instructions the verdict was for the plaintiff.

In *Lime Rock Bank* v. *Macomber*, 29 Maine, 564, the note in suit was made payable to the bank, but for the benefit of one Williams, under an agreement between him and the defendant, that the bank should hold the property as the trustee of Williams, for whose use the action was brought.

It will be observed that in each of the above cases, the defendants, either expressly or by necessary implication, consented to the disposition which was actually made of the notes to which they were parties.

In *Powell* v. *Waters*, 17 John. 176, the note was payable *at* the bank of Newburg *to* the defendant, and by him indorsed.

In *Thompson* v. *Armstrong*, 5 Ala. 383, the promise was to pay Andrew Armstrong, Esq., cashier, or bearer, *at* the Branch of the Bank of the State of Alabama, at Mobile.

In *Com. Bank of Natchez* v. *Claibourne & al.*, 5 How. Miss. 301, the note was payable to the plaintiff bank, but was discounted by one Briggs, the bank having no interest therein. The action was sustained. The Court remarked, "this was an accommodation note. In this respect it is to be considered a letter of credit, for the amount specified on its face, and is consequently valid and binding against

the makers, in the hands of any holder who comes fairly to the possession of it for a *bona fide* consideration."

In the case of *Chenango Bank* v. *Hyde & als.*, the note was made payable to the bank, but not being in proper form the bank refused to discount it. The money was then advanced at the bank by Birdsoll, with the agreement that the note should be delivered to the bank to be retained, as the agent of, and as security to Birdsoll for the money advanced by him, and another note was to be made, which was designed to be discounted by the bank, and from the proceeds Birdsoll was to be paid. This transaction appears to have occurred in presence of the officers of the bank. The new note was never executed. Under these circumstances the Court held that Birdsoll was entitled to recover in the name of the bank.

In *Cross* v. *Rowe*, 2 Fost. N. H. 77, the note was originally payable to the South Berwick Bank, or order, and was intended to be discounted for the benefit of Cross, to pay for a horse which he had sold to Rowe. But the bank refused to discount the note, and it was received by Cross in payment for the horse, instead of the money. After it fell due, and not being paid, the bank, on being indemnified, indorsed the note to Cross, who brought an action thereon.

Upon this note the Court remarked, " its design has not been perverted to the injury of any one of the signers, nor has it been put to any purpose that can properly be regarded as a change from its original intent."

In the case of *Clinton Bank* for use of *Rhodes* v. *Ayer & al.*, 16 Ohio, 282, one Niel signed a note for six hundred dollars as surety for Ayer, payable to the Clinton Bank or order. The bank refused to discount the note, and Ayer turned it over to Rhodes in payment of a preëxisting debt, without the knowledge of Niel. Upon that note an action was brought in the name of the bank for the benefit of Rhodes. The Court held that the action could not be maintained. The Court say, " we are of opinion that the New York case, (above cited,) is not sustainable upon prin-

ciple. Niel might be willing to become surety for Ayer to the Clinton Bank, when he would be utterly unwilling to have his note in the hands of Rhodes. He might be willing to aid him in procuring a loan for ready cash, when he would have been unwilling to become surety for an old debt. If the note was a letter of credit in any sense, it was a letter filled up and directed to a particular person, and no one had a right to advance any credit upon it but the person to whom it was addressed. Niel agreed to become surety to no one else. The note had not been negotiated. It had not in fact acquired a commercial character, and there is nothing in the case to bring it within the law merchant."

The principles laid down in the above extracts from the opinion of the Court are sound, and apposite, and apply to the case at bar.

The principles of the above case are also sustained in *Allen* v. *Ayer*, 3 Pick. 298, and *Adams Bank* v. *Jones*, 16 Pick. 574.

In the case at bar, the note was not only payable to the Manufacturers' Bank, but it was to be discounted for a specific purpose, and part of the proceeds were to be appropriated to the payment of a debt due to a firm of which the defendant was a member. He might well be willing to become surety on a note payable to a bank, to enable Greenleaf to raise money to prosecute a new business, and to pay an existing debt to his firm, when he would be unwilling to become a party to a note to be sold in the market, to pay other old debts of Greenleaf, or to raise money for him for other purposes. From the fact that the defendant was willing to become surety to a particular party, to raise money for particular objects, it would be unreasonable to infer that he consented to assume a general liability to any party, and for any purpose. The Court cannot say that it was immaterial to the defendant to whom the note was delivered, or for what purpose it was used.

The liability of a surety is not to be extended by implication, beyond the very terms of his contract. It is not sufficient that he sustain no injury by the change in the contract or that it may be for his benefit. He has a right to stand upon the very terms of his contract, and any variation without his consent is fatal. *Miller* v. *Stuart*, 9 Wheat. 703.

Indorsers and sureties are not bound by any new contract prejudicial to them, to which they are not parties. *Cross* v. *Rowe*, 2 Fost. 77.

The note was never discounted by the bank, and consequently there never was any valid contract between them and the maker thereof. *Adams Bank* v. *Jones*, 16 Pick. 574.

It was diverted by Greenleaf from the purposes for which it was executed by the defendant, without his consent. Thus to divert it was fraudulent on the part of Greenleaf. 16 Pick. 574.

It did not come into the hands of Day by a proper transfer, and in the regular course of business. He therefore took it at his peril, subject to all its infirmities, and to every existing and legal defence. There has been no such delivery to Day as will create any privity of contract between him and Cole, without the consent of the latter, and there is nothing in the case from which such consent can be inferred.

*A nonsuit must be entered.*