## Case No. 14,871.

UNITED STATES v. CORWINE et al.

[1 Bond, 339; [1] 1 Wkly. Law Gaz. 413.]

Circuit Court. S. D. Ohio. April Term, 1860.

PRINCIPAL AND SURETY—GOVERNMENT CONTRACT—DISCHARGE OF SURETIES—CHANGE OF CONTRACT.

1. The sureties upon a bond, wherein the principals have obligated themselves to the United States to open a ship canal three hundred feet in width and twenty feet in depth, and keep it open the same width and depth for four and a half years from the time of the acceptance of the work by the secretary of war, are discharged from all liability on the same if the principals do not perform their agreement for opening the channel according to its terms, and the government accepts the work with a channel only eighteen feet in depth instead of twenty, as required by the contract.

2. A surety is not bound beyond the terms of his contract, and his liability can not be extended or enlarged by implication, and any change in terms, unless expressly assented to by him, releases him from his legal responsibility.

[Cited in U S. v. Case, Case No. 14,743.]

At law.

Stanley Matthews, for the United States.
R. M. Corwine, for defendants.

LEAVITT, District Judge. This is an action of debt against Richard M. Corwine, John A. Corwine, and Wm. Wiswell, Jr., as the sureties of Waldo Putnam Craig and William Russell Righter. There is a general demurrer to the declaration on which the questions submitted to the court are presented. The declaration avers, that on November 13, 1856, the defendants executed a bond to the United States, in the penalty of $75,000, to avoid on the condition that the said Craig and Righter should faithfully fulfill their written contract of the same date, whereby they agreed to open a straight ship channel at the outlet of the Mississippi river, known as the Pass de l'Outre, to a depth of twenty feet, throughout a well-defined width of three hundred feet, to the deep water of the Gulf of Mexico, and keep the same open to the same width and depth for the period of four and a half years from the time of the completion and acceptance of the work. It is further averred, that by the said contract Craig and Righter were to finish the work within fifteen months from the said November 13, 1856, and that upon its completion to the satisfaction of the secretary of war, the United States was to pay them $125,000. The declaration also avers, that in consideration of the agreement of said Craig and Righter to keep open the said channel as above stated, the United States agreed to pay them $36,000 for the period of four and a half years, and at the same rate for the further time they should keep said channel open, until the appropriation for that purpose should be exhausted. It is also recited as a part of said contract, that in order to determine

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

whether the agreement to keep open the said channel had been complied with, the secretary of war should appoint an officer or officers to examine the work, at such time as he might deem necessary; and that, if the secretary should be satisfied from the report of such examinations that the channel had been constantly maintained of the width and depth before stated, at the expiration of one-third of said period of four and a half years, eighty per cent. of one-third of the amount of the contract to keep said channel open was to be paid to said Craig and Righter, and one-third more at the expiration of two-thirds of the said time, and the balance at the end of said four and a half years. The declaration then avers that Craig and Righter proceeded to execute said contract to open said channel; and that on September 10, 1858, they had opened the same at the width of three hundred feet, and with the depth of eighteen feet, and that on that day the work was accepted by the secretary of war, and the contract price of $125,000 was then paid in full. The breach of the condition of the bond, as assigned, is that Craig and Righter, since the said September 10, 1858, have not kept the said channel open, with a width of three hundred feet, and the depth of eighteen feet, and that thereby an action has accrued against the defendants, as the sureties of Craig and Righter. The second count of the declaration is upon a bond which recites a contract identical with that set forth in the first, with the exception that it refers to the opening of another channel at the mouth of the Mississippi. There is, of course, no occasion for the separate consideration of the two counts.

It is not my purpose to examine all the points of exception to the declaration urged in support of the demurrer. There is one, which, in my judgment, is conclusive as to the plaintiff's right to recover against these defendants on the cause of action set out in the declaration. The point of this exception may be stated thus: That the declaration shows on its face that Craig and Righter did not perform their agreement for opening the channel, according to its terms, and that the government accepted the work with a channel of only eighteen feet in depth, instead of twenty, as required by the contract, without any averment that the defendants had any knowledge of, or assented to such modification. On this ground, it is insisted the sureties in the bond are relieved from all liability and that this action can not be maintained against them. The contract, as has been stated, obligated Craig and Righter to make the channel of a specified width and depth, and to keep it open, of that width and depth, for four and a half years from the time of the acceptance of the work by the secretary of war. The defendants became their sureties in a bond conditioned for the faithful performance of these stipulations. The work was accepted by the secretary of war and paid for in full, as if completed according to the contract. The

government had a right to forego the terms of the contract, in regard to the depth of the channel, and to accept one of less depth. In doing this, the obligation of the contract as to the dimensions of the channel was at an end, both as to the principals and the sureties, and the government was estopped from asserting any claim for a violation of that part of the contract. It was, in effect, the substitution of a new contract for that originally entered into by the parties. But it is claimed that the defendants, as sureties, are liable upon the averment in the declaration that Craig and Righter failed to keep open the channel as accepted by the United States. There seems to be an incongruity between the contract set out in the declaration and the averment of its breach. In other words, the declaration avers a breach of a contract, for the performance of which these defendants contracted no obligation as sureties. Their undertaking was, that a channel twenty feet in depth, made in all respects according to the requirement of the contract, should be kept open for a specified time. The United States waived that part of the contract which specified the depth of the channel, and accepted the work with a channel of a less depth. The sureties are in no sense parties to this arrangement, and therefore not bound by it.

There is no principle better settled than that a surety is not bound beyond the terms of his contract, and that his liability can not be extended or enlarged by implication; and any change in its terms, unless expressly assented to by him, releases him from his legal responsibility. This is famaliar law—so long and so well settled that it is not necessary to cite the numerous cases by which it is sustained. Its application to the present case is so apparent, as not to admit of doubt or controversy. As already stated, these defendants as sureties, guarantied that Craig and Righter should maintain a channel of a specified depth. The bond to which they were parties, though executed at the same date of the execution of the contract, could not take effect, so far as it related to keeping the channel open, until the channel was excavated as required by the contract. The averment of the declaration, however, is that such a channel has not been made, and was not insisted on by the government. It follows as an inevitable conclusion, that the condition on which alone the sureties became bound for the maintenance or continuance of the channel, and on which their obligation was to attach, did not occur. There never was a channel of twenty feet depth, and their undertaking to keep it open was never operative, and is of no obligation on them. The contract provided that the work should be inspected by an officer to be appointed by the secretary of war; and if it appeared from his report "that the work has been properly executed, and that a straight channel of the above width and depth actually exists," it was to be paid for; but if it should be found "that the work had not been

completed agreeably to the contract," the contractors were to receive no pay for what they had done. It is clear, therefore, that the acceptance of the work by the government before a channel was opened, as required by the contract, left nothing on which the guaranty of the sureties could operate.

This view would seem to be decisive of the question raised on this demurrer, and it is not a material inquiry whether the interference of the government, and its acceptance of the work not executed according to the contract, could affect, injuriously or otherwise, the interests of the sureties. The only ground on which it is claimed that the sureties are liable is, that the acceptance of the work in its incomplete state has not placed them in any worse condition than if the contract had been strictly complied with, and that their liability on their undertaking that the channel should be kept open, continues unaffected by the act of the government. The first reply to this assumption is, that any change in the terms or obligation of a surety, without his consent, releases him from liability. And it is well settled, that this principle applies, even in cases where a modification of the contract is favorable to the sureties. But in this case, if it be conceded that the government had a right to waive a strict performance of this contract on the part of Craig and Righter, and to insist on the continued legal liability of the sureties, for the reason that they were not injured by the act of the government, the facts will not sustain the position. Their obligation was, that the contractors should keep open a channel of the depth of twenty feet. Now, it needs no argument to prove that a channel of only eighteen feet in depth would be much more liable to fill up or become obstructed than if it were twenty feet deep. The pressure of the water being so much greater in the latter case, the probabilities that the channel would fill up would be greatly lessened; in a word, there is a palpable difference in an undertaking to maintain an open channel made to the depth of twenty feet, and one but eighteen feet deep. I will only add, that while, in my judgment, the law of the case is with these defendants, and am clear that this action can not be maintained against them, I am equally clear that no claim of justice is invaded by holding them to be exempt from liability. Under the circumstances of the case, an opposite conclusion would operate inequitably on them. There was a moral obligation on the government, to protect the rights of these sureties as far as practicable, without a sacrifice of its own interest. Under the contract, the government was not bound to pay anything for the work, unless it was completed according to the terms of the contract. If, without consulting the sureties, it was deemed expedient to pay the full contract price for the excavation of a channel but partially made, they are fully justified in asserting their exemption from liability. And it would be a most rigorous appli-

cation of law that would enforce the payment of the penalty of their bond. But without further discussion of the points presented on this demurrer, I am led unhesitatingly to the conclusion that it must be sustained.