UNITED STATES v. FREEL et al.

(Circuit Court, E. D. New York. February 15, 1899.)

1. PRINCIPAL AND SURETY—RELEASE OF SURETY—ALTERATION OF CONTRACT.
   Where the release of a contractor's surety from the obligation of a building contract on account of subsequent changes therein, without his consent, is involved. the true meaning and intent of the contract should be ascertained according to usual rules of construction; but, when the expressed intention of the parties has been determined, the obligation of the surety is strictissimi juris, from which he is discharged by any alteration of the substantial terms of the contract, whether the same be harmful or beneficial to him. Where the contract authorizes the parties to enter into auxiliary contracts for alterations of the work from that shown in the plans and specifications, without invalidating the primary contract, the parties may stipulate, without releasing the surety, for such enlargement or extension of the work as, in nature, magnitude, and expense, would be consistent with, and bear a reasonable and subsidiary relation to, the work first undertaken.

2. SAME.
   Under such a provision, the alteration of the plans and specifications of a contract for the construction of a dry dock for the United States,

in consideration of $612,000, so that its length should be 670 rather than 600 feet, with an increased payment of $45,566, and an extension of the time of performance for three months, was within the contemplation of the parties and sureties to the original contract, and the latter were not released thereby. But a supplemental contract changing the location of the entire dry dock from the water side, as provided in the initial contract, to a location 64 feet inland, and requiring the contractor to make all necessary excavations and connections with the water at an increased payment of $5,063.18, and with an increased time for performance, released the sureties, inasmuch as all consent of the sureties anticipating changes in the contract related to alterations in the attached plans and specifications, of which the location of the structure was no part.

(Syllabus by the Court.)

This is an action by the United States on the bond of a contractor for the construction of a dry dock at the Brooklyn navy yard. On demurrer to complaint.

George H. Pettit and Robert H. Roy, for the United States.
James R. Soley and Howard A. Taylor, for defendants.

THOMAS, District Judge. The question presented on this demurrer is whether the sureties of a contractor, who undertook by contract concluded with the United States, on the 17th November, 1892, in consideration of $612,000, to build a dry dock, "to be located at such place on the water line of the navy yard, Brooklyn, N. Y., as shall be designated," are relieved from liability by reason of a change of such contract by a supplemental agreement concluded between the contractor and the United States, on the 16th day of June, 1893, whereby it was stipulated that the dry dock should be extended to the length of 670 feet, which was 70 feet in excess of the length as originally provided, at an agreed price of $45,556, whereby also "the time fixed in the original contract for the completion of the said dry dock shall be extended three (3) months, on account of the extra labor," etc., or are relieved from liability by reason of an agreement concluded on the 17th of August, 1893, between the contractor and the United States, whereby, in consideration of $5,063.18, to be paid the contractor, it was stipulated to "change its location to one sixty-four (64) feet further inland than that laid down and staked out when the said contract was entered into," and whereby the contractor undertook that "he will perform all the additional excavation necessary at the entrance of the dry dock in consequence of the said change of location; also, all the additional work necessary to lengthen the suction pipes provided to be laid down from the present pump house, including the piping, round piles, sheet piles, timber, iron work, excavation, and back filling, etc., and all other work incident to said change of location, supplying all the labor and materials therefor," whereby also "the time limited by the said contract for the completion of the dry dock shall be extended for a period of eight (8) weeks." The plaintiff answers the contention that the supplementary contracts effect the discharge of the sureties by the claim that such contracts were made pursuant to the seventh article of the contract, whereby the sureties anticipated such contracts, and consented there-

to.  Before considering the seventh article, a survey of the applicable law may be obtained by summarizing the holdings:

1.  The obligation of the surety is coincident primarily with that of his principal.  Benjamin v. Hillard, 23 How. 149, 164; McCluskey v. Cromwell, 11 N. Y. 593, 598; Bank v. Dillon, 30 Vt. 122, 126.

2.  In estimating the extent of the liability of a surety for the performance of a contract, the true intent, meaning, and fair scope of the contract should be ascertained.  U. S. v. Boyd, 15 Pet. 187, 208; Smith v. U. S., 2 Wall. 219, 235; Lee v. Dick, 10 Pet. 482; McCluskey v. Cromwell, 11 N. Y. 593, 598; Gates v. McKee, 13 N. Y. 232, 235; Dobbin v. Gradley, 17 Wend. 422, 425; Crist v. Burlingame, 62 Barb. 351, 355; Lodge v. Kennedy (N. D.) 73 N. W. 524; Wehr v. Congregation, 47 Md. 177, 187; Beers v. Wolf, 116 Mo. 179, 184, 22 S. W. 620; Lionberger v. Krieger, 88 Mo. 160; Locke v. McVean, 33 Mich. 473.

3.  In ascertaining its true intent, meaning, and scope, the same rules of construction should be employed as are used in the interpretation of other contracts.  The extent of the surety's obligation must be determined from the language used, read in the light of the circumstances surrounding the transaction.  But, when the intention of the parties has thus been ascertained, then the courts carefully guard the rights of the surety, and protect him against a liability not strictly within the precise terms of his contract.  Leggett v. Humphreys, 21 How. 66, 73; Association v. Conkling, 90 N. Y. 116, 121, 122; McCluskey v. Cromwell, 11 N. Y. 593; Crist v. Burlingame, 62 Barb. 351; Ludlow v. Simond, 2 Caines, Cas. 1; Plow Co. v. Walmsley, 110 Ind. 242, 246, 11 N. E. 232; Irwin v. Kilburn, 104 Ind. 113, 3 N. E. 650; Birdsall v. Heacock, 32 Ohio St. 177; Dobbin v. Bradley, 17 Wend. 422, 425; Gamble v. Cuneo, 21 App. Div. 413, 47 N. Y. Supp. 548; People v. Backus, 117 N. Y. 196, 201, 22 N. E. 759; Smith v. Molleson, 148 N. Y. 241, 246, 42 N. E. 669; Gates v. McKee, 13 N. Y. 232, 237; Belloni v. Freeborn, 63 N. Y. 383; Brandt, Sur. § 54.

4.  The liability of the surety cannot be extended by implication.  Miller v. Stewart, 9 Wheat. 680; U. S. v. Boyd, 15 Pet. 187, 208; Smith v. U. S., 2 Wall. 219, 234; U. S. v. Boecker, 21 Wall. 652; U. S. v. American Bonding & Trust Co., 89 Fed. 925; Dobbin v. Bradley, 17 Wend. 422, 425; Livingston v. Moore, 15 App. Div. 15, 44 N. Y. Supp. 125; Raney v. Baron, 1 Fla. 327; Field v. Rawlings, 6 Ill. 581; Bank v. Cole, 39 Me. 188; Blair v. Insurance Co., 10 Mo. 559; Henderson v. Marvin, 31 Barb. 297; Grant v. Smith, 46 N. Y. 93, 97.

5.  A surety has the right to stand on the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, his liability will be extinguished, even though such alteration be for his own benefit.  Miller v. Stewart, 9 Wheat. 680; Id., 4 Wash. C. C. 26, Fed. Cas. No. 5,951; U. S. v. Boecker, 21 Wall. 652, 657; Smith v. U. S., 2 Wall. 219; Martin v. Thomas, 24 How. 315, 317; Reese v. U. S., 9 Wall. 13, 21; U. S. v. Tillotson, 1 Paine, 305, 324, Fed. Cas. No. 16,524; U. S. v. American Bonding & Trust Co., 89 Fed. 925; Earnshaw v. Boyer, 60 Fed. 528; Ludlow v. Simond, 2 Caines, Cas. 1; U. S. v. Hillegas, 3 Wash. C. C. 70, Fed. Cas. No.

15,366; Grant v. Smith, 46 N. Y. 93, 97; Paine v. Jones, 76 N. Y. 274, 279; Page v. Krekey, 137 N. Y. 307, 314, 33 N. E. 311; Dobbin v. Bradley, 17 Wend. 422; Bangs v. Strong, 7 Hill, 250; Livingston v. Moore, 15 App. Div. 15, 44 N. Y. Supp. 125; Mackay v. Dodge, 5 Ala. 388; Bethune v. Dozier, 10 Ga. 235; Taylor v. Johnson, 17 Ga. 521; Plow Co. v. Walmsley, 110 Ind. 242, 11 N. E. 232; Mayhew v. Boyd, 5 Md. 102; Brigham v. Wentworth, 11 Cush. 123; Bank v. Cole, 39 Me. 188, 193; Simonson v. Grant, 36 Minn. 439, 31 N. W. 861; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620; Ryan v. Morton, 65 Tex. 258; Wylie v. Hightower, 74 Tex. 306, 11 S. W. 1118; Bonar v. Mac-Donald, 3 H. L. Cas. 226, 239; Rees v. Berrington, 2 Ves. Jr. 540. (a) While the authorities state that the surety is relieved, whether the alteration is material or not (Paine v. Jones; Page v. Krekey; Livingston v. Moore, supra), yet it is probable that trivial or very minor changes, relating to detail, and not effecting any substantial change in the terms of the contract, will not release the sureties. Grant v. Smith, 46 N. Y. 93, 96; U. S. v. Tillotson, 1 Paine, 305, Fed. Cas. No. 16,524; Mayhew v. Boyd, 5 Md. 102; Plow Co. v. Walmsley, 110 Ind. 242, 11 N. E. 232. (b) Changes in the specifications of building contracts fall within this rule. Evans v. Graden, 125 Mo. 72, 28 S. W. 439; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620.

6. A variance in the agreement, without the sureties' consent, by a modifying contract, releases the sureties, although the alleged liability is incurred under the original contract. Bonar v. MacDonald, 3 H. L. Cas. 226; Pybus v. Gibb, 38 Eng. Law & Eq. 57.

7. A contract for new work, by which no new terms are added to the original contract, and whereby the prior contract is in no way embarrassed by greater difficulties of fulfillment, does not release the sureties. Ryan v. Morton, 65 Tex. 258; Barclay v. Deckerhoof, 151 Pa. St. 375, 24 Atl. 1067, where the contract for additional work was indorsed on the original contract. See, also, Warden v. Ryan, 37 Mo. App. 467. (a) The construction by a contractor engaged to build a sewer, of 15 additional feet, is not a modification of the original contract discharging his sureties, but is a new and additional contract. Fitzpatrick v. McAndrews, 12 Pa. Co. Ct. R. 353.

8. If the primary contract contemplate changes in the work, either in nature or extent, similar to that stipulated in the supplemental contract, the performance whereof will be obligatory upon the contractor, the surety's consent to the secondary contract will be deemed to have been anticipated by his placing himself in the relation of surety to the original contract. Wehr v. Congregation, 47 Md. 177; Village of Chester v. Leonard, 68 Conn. 495, 37 Atl. 397; De Mattos v. Jordan, 15 Wash. 378, 386, 46 Pac. 402; Northern Light Lodge v. Kennedy (1897; N. D.) 73 N. W. 524; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620; Stewart v. McKean, 10 Exch. 675; Hayden v. Cook, 34 Neb. 670, 52 N. W. 165. (a) It is immaterial that the primary contract does not make the execution of the changes obligatory upon the contractor, provided it empower him to make a subsidiary contract for the performance thereof, or contemplate that he may make voluntarily such contract. Lodge v. Kennedy (1897; N. D.) 73 N. W. 524; Beers v. Wolf, 116 Mo. 179, 185, 22 S. W. 620.

9. Where the original contract provides that the agreement for changes shall be in writing, alterations made pursuant to verbal agreements or directions, without the consent of the surety, release him. Eldridge v. Fuhr, 59 Mo. App. 44; Killoren v. Meehan, 55 Mo. App. 427; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620. But see Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669. (a) When the contract is to be agreed upon between the superintendent and the parties of the second part, the sureties must be parties to the supplemental agreement if they are formal parties to the first contract. Beers v. Wolf, 116 Mo. 179, 22 S. W. 620.

10. Where the original contract provides for making payments to the contractor in certain amounts, a departure from such method of payment may discharge the sureties. Village of Chester v. Leonard, 68 Conn. 495, 37 Atl. 397; Rowan v. Manufacturing Co., 33 Conn. 1; Howard Co. v. Baker, 119 Mo. 397, 24 S. W. 200; Ryan v. Morton, 65 Tex. 258; Evans v. Graden, 125 Mo. 72, 28 S. W. 439; Bragg v. Shain, 49 Cal. 131; Navigation Co. v. Rolt, 6 C. B. (N. S.) 550; Calvert v. Dock Co., 2 Keen, 638. See De Mattos v. Jordan, 15 Wash. 378, 46 Pac. 402; Leavel v. Porter, 52 Mo. App. 632.

The seventh article, to which reference is made above, is as follows:

"Seventh. The construction of the said dry dock and its accessories and appurtenances herein contracted for shall conform in all respects to and with the plans and specifications aforesaid, which plans and specifications are hereto annexed, and shall be deemed and taken as forming a part of this contract, with the like operation and effect as if the same were incorporated herein. No omission in the plans or specifications of any detail, object, or provision necessary to carry this contract into full and complete effect, in accordance with the true intent and meaning hereof, shall operate to the disadvantage of the United States; but the same shall be satisfactorily supplied, performed, and observed by the contractor, and all claims for extra compensation by reason of, or for or on account of, such extra performance are hereby, and in consideration of the premises, expressly waived: and it is hereby further provided, and this contract is upon the express condition, that the said plans and specifications shall not be changed in any respect, except upon the written order of the bureau of yards and docks, and that, if at any time it shall be found advantageous or necessary to make any change, alteration, or modification in the aforesaid plans and specifications, such change, alteration, or modification must be agreed upon in writing by the parties to the contract, the agreement to set forth fully the reasons for such change, and the nature thereof, and the increased or diminished compensation, based upon the estimated actual cost thereof which the contractor shall receive, if any: provided, that, whenever the said changes or alterations would increase or decrease the cost by a sum exceeding five hundred dollars ($500), the actual cost thereof shall be ascertained, estimated, and determined by a board of naval officers to be appointed by the secretary of the navy for the purpose, and the contractor shall be bound by the determination of said board, or a majority thereof. as to the amount of increased or diminished compensation he shall be entitled to receive in consequence of such change or changes: Provided, further, that if any enlargement or increase of dimensions shall be ordered by the secretary of the navy during the construction of said dry dock, that the actual cost thereof shall be ascertained, estimated, and determined by a board of naval officers, to be appointed by the secretary of the navy, who shall revise said estimate, and determine the sum or sums to be paid the contractor for the additional work that may be required under this contract: and provided, also, that no further payment shall be made, unless such supplemental or modified agreement shall have been signed before the obligation arising from such change or modification was incurred, and until after its approval by the party of the second part; and further provided that no

change herein provided for shall in any manner affect the validity of this contract."

A characteristic feature of this article is, as well stated by the demurrant, the statute of fraud which it embodies. Its salient and essential purpose was to guard the government from claims for extra ·work. This appears repeatedly as the section progresses. The contract is declared to be upon the express condition that the plans and specifications shall not be changed except upon a written order of the bureau of yards and docks, and that, if it shall be found "advantageous or necessary" to make any change "in the aforesaid plans and specifications," the same must be agreed upon by the parties to the contract. This is followed by the proviso that, where the increased cost exceeds $500, a board of naval officers shall determine the sum to be paid or deducted from the contract; and the second proviso states "that, if any enlargement or increase of dimensions shall be ordered by the secretary of the navy during the construction," the same shall be ascertained by a board of naval officers, who shall determine the sum that shall be paid to the contractor for the "additional work that may be required under this contract"; and the third proviso is to the effect that "no further payment shall be made, unless the supplemental or modified agreement shall have been signed before the obligation arising from such change or modification was incurred, and until after its approval by the party of the second part." There is a final proviso that "no change herein provided for shall in any manner affect the validity of this contract."

It is unnecessary to determine whether it would be obligatory upon the contractor to enter into the supplemental contract to which reference is made in this article, however doubtful it may be whether the United States is protected in that regard. Nevertheless, the article does provide a procedure to be observed, should occasion arise, for deduction from, or addition to, the work as prescribed in the plans and specifications; and it is contemplated, at least, that the contractor may enter voluntarily into such a contract, and that such contract shall not affect the validity of the main agreement. Did not the sureties, when reading this provision, discover and understand that such changes might be called for; that the contractor might make a supplemental contract therefor; and that the change stipulated would not invalidate the original contract to which they stood in the relation of parties? Would it be reasonable to hold that the sureties understood, or were fairly justified in understanding, while reading this seventh article, that any changes made pursuant to it would release them from their relation to the original contract, whose continued validity was declared notwithstanding such changes? Finally, would it be consonant with the intention of the parties, including the sureties, to read into the seventh article a provision that the making of an auxiliary contract without the consent of the sureties should release them? It is considered that, although the contractor was not by any specific terms obligated to enter into any subsidiary agreement, yet that he might be asked to do so, and that the article contemplated his assent to modifications of the work, without impairing the main obligation or the

liability of those who assured its performance. If this be correct, did the contemplated change of the contract justify the agreement for the 70-feet extension of the dock? This presents a grave question, and its solution requires some just rule of general application. Do sureties, by consenting to changes involving an enlargement of the work, consent to an unlimited extension thereof? Could the dry dock have been doubled in length? If the contract were for a 2-story house, could it have been increased to 20 stories? If it were agreed that the material should be of wood, could marble be substituted? Obviously, such excessive changes would not be within the thought or the understanding of the parties or the sureties. But a rule of interpretation, otherwise suitable, cannot be defeated by showing the absurdity of its unlimited application. All rules operate within reasonable limits, and the court regards their legitimate use, and not their abuse. Where a building contract contemplates changes in the work, which will bind the sureties for the fulfillment of the contract as modified, the changes subsequently made must bear in extent and value some reasonable ratio to the original structure. If the plans and specifications call for a house of particular dimensions and quality, a consent to changes anticipated in the contract should be construed to be limited to changes relevant to, and consistent with, the structure first projected. Changes of such nature, and only such changes, would be anticipated by all the parties to the contract as would be reasonable and cognate to the structure primarily planned, and its purpose. In the case at bar a large dry dock was required by the United States to be located at a principal navy yard, and it was manifestly intended for the accommodation of all classes of government vessels. Article 7 manifestly contemplated that changes in its dimensions might be required, and provided for auxiliary contracts for fixing a due consideration for such extension, without disturbing otherwise the continuance of the principal engagement. The subsidiary contract provided for an extension of 70 feet, which was nearly 12 per cent. of the length first adopted, at an increased cost of about $7\frac{1}{2}$ per cent. of the whole consideration. Considering the magnitude of the structure as first intended, and its great expense, and the large use to which it was devoted, the change seems to be such as the parties might have had in view in subscribing to the provisions of the seventh article. The change is a homogeneous, and not an incongruous, addition, nor even a duplication of parts, as would be the case in multiplying the stories of a house; but it is the mere symmetrical enlargement or extension of a specific thing, the construction of which was undertaken, and such enlargement is not greater than the customary use of a dry dock by the government might demand in common reason. Although article 7 might well have contained clearer provisions for the continued obligation of the sureties and the protection of the government thereby, yet it seems to admit fairly of the interpretation given.

There have been various judicial expositions of the allowable departure from original plans and specifications, when some change of plans was contemplated by the original building contract, to some

of which reference will be made. Slight and inexpensive departure did not release the sureties. Risse v. Planing-Mill Co. (Kan Sup.) 40 Pac. 904 (see cases in opinion). So, reasonable alterations that did not materially increase the cost. Consaul v. Sheldon, 35 Neb. 247, 52 N. W. 1104. So, change of material for the window lintels of a court house from stone to railroad iron. Howard Co. v. Baker, 119 Mo. 397, 24 S. W. 200. So, sinking the foundation of a building two or three feet deeper, in the course of repair. Club v. Finlay, 53 Mo. App. 250. So, enlargement of a church $3\frac{1}{2}$ feet, and the change of the material for certain foundations from brick to stone, the court stating that "it is no argument against the construction adopted that there is great difficulty in fixing a limit within which additions and alterations might be made." Wehr v. Congregation, 47 Md. 177. So, even unnecessary alterations, amounting to less than $250, made by direction of the architect. Association v. Fitzmaurice, 7 Mo. App. 283. So, in the case of a contract to build waterworks, where a line of pipes to be laid in a highway for a distance of over 2,500 feet was transferred to private property; another line was changed from one street to another, and considerably lengthened; another line was shifted for a distance of over a mile, so as to be at some points 200 feet from that marked on the original plans; and where the dimensions and length of some of the pipes also varied, so as to call for additional expense on the part of the contract, none of which changes were necessary to the proper fulfillment of the work. Village of Chester v. Leonard, 68 Conn. 495, 37 Atl. 397. So, in the erection of a building in the city of Fargo, North Dakota, where alterations were made, which increased the price $1,000 (Lodge v. Kennedy [1897; N. D.] 73 N. W. 524). So, the surety on a bond for the faithful performance of a building contract, which provided that the owner should have the right during the progress of the work to make changes and alterations in the building, was not released by the fact that during the progress of the work some changes and additions in the building were made which increased its cost to an inconsiderable extent. Hayden v. Cook, 34 Neb. 670, 52 N. W. 165.

Respecting the change of location of the dry dock, a different conclusion is necessary. The contract itself, as distinguished from the plans and specifications, provides that the dock shall be built on the water side, while the supplemental contract expressly changes the location to a point 70 feet from the water side, and provides that the contractor shall do all the excavation and work, and furnish all the additional material, necessitated by the change, at an increased remuneration of $5,063.18. The transfer of the site 70 feet from the water side is of itself a distinct departure from the original project. In considering whether this change releases the sureties, it should be remembered that broad, liberal, and equitable considerations may not prevail, but rather that the rule is technical and strict. It has been said that sureties are favorites of the law. Ludlow v. Simond, 2 Caines, Cas. 1, 29. It may be said better that the surety assures the performance of a certain contract, and his liability is conditioned inflexibly upon the continuance of the very terms of that contract.

If the principal parties thereto change their agreement, there springs into being a new contract, to which the sureties are strangers; and, if the guaranty of its performance is desired, it must be obtained de novo. Of this a learned judge said as follows:

"Now, it must always be recollected in what manner a surety is bound. You bind him to the letter of his engagement. Beyond the proper interpretation of that engagement you have no hold upon him. He receives no benefit and no consideration. He is bound, therefore, merely according to the proper measure and effect of the written engagement he has entered into. If that written engagement is altered in a single line, no matter whether it be altered for his benefit, no matter whether the alteration be innocently made, he has a right to say: 'The contract is no longer that for which I engaged to be the surety. You have put an end to the contract I guarantied, and my obligation therefore is at an end.'" Blest v. Brown, 6 Law T. (N. S.) 620.

This holding illustrates the tendency of the rule. In any case, the surety, in binding himself to the first contract, limited rigidly his liability to that instrument, and its scope measures with precision his undertaking. If he consented to vouch unwisely, he is entitled to suffer to the full measure of his folly, without a favorable revision of his liability by the principal. And, on the other hand, it is his right to fix the final boundary of his faith in the financial, and, in the case of a building contract, the architectural, capacity of his principal, and mark out in the agreement whatever method should attend the execution of the work; and the main contracting parties may not add ever so little to the burden which the contractor has assumed, or deviate from the methods which were to accompany its fulfillment. It results from this that he who would charge a surety for his principal's breach of contractual duty must travel without deviation the way pointed out in the contract, however iron-bound it may be, for there is for the surety in the enforcement of his bond no equity nor latitude beyond its strict terms. Such is the nature of the implied condition upon which the surety's liability depends.

In the case at bar the plaintiff is bound, when a breach of condition is alleged, to plead performance or waiver of the condition, which waiver would be inferred from a consent to the change of location. But this it has failed to do, because, from the nature of the case, it could not be done. At this juncture the seventh article does not aid. That article consents to changes in the plans and specifications "annexed" to the contract, and the whole article has immediate and sole reference thereto, and does not provide for alteration in the location of the structure itself, which location is no part of the plans and specifications, but has its own distinct place in the contract. Therefore there seems to be no saving clause respecting this change of location, and the case falls within the stern rules which have been presented. Some knowledge of the strictness with which the law here involved has been applied may be obtained from a consideration of similar contracts.

In U. S. v. Corwine, 1 Bond, 339, 25 Fed. Cas. 671, the principals bound themselves to the United States to open a ship canal 300 feet wide and 20 feet deep, and keep it open, of such dimensions, for $4\frac{1}{2}$ years from the time of acceptance by the secretary of war. The

principals did not perform their agreement for opening the canal according to its terms, and the government accepted the work with a channel only 18 feet in depth. The sureties of the contractor were released by the change in the terms of the contract.

In U. S. v. Tillotson, 1 Paine, 305, Fed. Cas. No. 16,524, a person made a contract with the war department to build a fort, in which it was provided that the fortification was principally, as to the revetment walls, to be built of brick, and thereafter there was an auxiliary contract, by which it was agreed that, in place of brick, a certain composition, called "tapia," which was a species of artificial stone formed by a union, in proper proportions, of sharp sand, fresh lime, and oyster shells, with water sufficient to produce adhesion, should be used in such portions of the walls as should be designated by the superintending engineer, and the contractor stipulated to receive $10 for every cubic yard of tapia, instead of $11 for every cubic yard of brickwork as mentioned in the agreement. This was held to be a material alteration, and released the contractor's surety.

In U. S. v. Case (U. S. Cir. Ct. 2d Cir. 1879) 25 Int. Rev. Rec. 56, Fed. Cas. No. 14,743, the guarantors undertook that a bidder for a contract to furnish stone about to be let by the plaintiff would, in case the contract was awarded to him, enter into the contract, with sufficient sureties, to furnish the material in conformity to the terms of the advertisement under which the bid was made. It was held, under the facts presented, that the undertaking was that a contract should be executed to furnish stone of a description designated by a sample which was to accompany the proposal, and that the guarantors were released when the bid was to furnish a different kind of stone from certain quarries.

In Mundy v. Stevens, 9 C. C. A. 366, 61 Fed. 77, sureties for the payment by a contractor to a subcontractor of all moneys received for work under a government contract as provided in the contract were released by an alteration of such agreement, whereby the right secured to the original contractors to deduct from the monthly payments 3 cents per yard for material dredged subsequently was modified so that payments of 2½ cents per cubic yard should be made monthly.

In U. S. v. Boecker, 21 Wall. 652, it was held that where a distiller's bond recited that a person is about to be the distiller at one place, to wit, "at the corner of Hudson street and East avenue, situate in the town of Canton," his sureties are not liable for taxes in respect of business carried on by him at another, as "at the corner of Hudson and Third streets," in the same town, even though he had no distillery whatever at the first-named place, about four squares from the last-named place.

In Grant v. Smith, 46 N. Y. 93, it was decided that a change of a contract to purchase a steam engine and two boilers of a given capacity and power, at an agreed price, by which an engine with three boilers, and of greater capacity and power was substituted, at an additional price, released the sureties.

In Ludlow v. Simond, 2 Caines, Cas. 1, it was held that, where a surety agreed to make good a deficiency in the sale of property at a

particular place, he was released if the sale was had at a different place, by order of the agent of the principal.

In Rowan v. Manufacturing Co., 33 Conn. 1, a contract provided that rifles should be made "with all possible dispatch"; but a supplemental contract, made before performance, provided that 300 rifles per week should be delivered for a certain period, and 600 per week afterwards. The surety was discharged.

In Bethune v. Dozier, 10 Ga. 235, the obligee bound himself to furnish 800 acres of pine land to furnish stock for a saw mill, and the principal accepted of 680 acres in fulfillment of the contract, without the surety's consent, and it was held that the surety was discharged.

In Zimmerman v. Judah, 13 Ind. 286, it was decided a supplementary agreement to put an additional story on a house released the surety for the contractor in the original contract.

In Morgan Co. v. McRea, 53 Kan. 358, 36 Pac. 717, the sureties on a bond, conditioned for the erection in accordance with certain plans and specifications, and keeping in repair of bridge abutments, were released from liability by a change in the plans of the work made by the principals, and accepted by the obligee of the bond, without their knowledge or consent. In the opinion it is said:

"The specification as to the west abutment, which is the one that fell, is that it shall be 7x20 feet at the base, 3x16 feet at the top, 26 feet high, and containing 90 cubic yards. It is definite as to dimensions and form, and calls for a four-sided structure, sloping in presumably on all sides. The structure actually erected and accepted by the plaintiff had wing walls at the ends, the stone of which were interlocked with those of the main part of the abutment. The bond executed by the defendants requires them to keep the work in repair."

It was held that to repair such a work was not the same thing as to repair the abutment of the form and dimensions specified in the contract.

In Beers v. Wolf, 116 Mo. 187, 22 S. W. 620, there was a change of six inches in the depth of the basement, and in the depth of the closets, and these changes made an additional cost in plastering alone of $221.61. The change in the depth of the basement added the cost of a bulkhead to secure sewer connection, and there was a different arrangement of the closets. The primary work was an addition to an hotel, at the price of $31,070. The sureties were released.

In Erickson v. Brandt (Minn.) 55 N. W. 62, it was held that the sureties on a bond of indemnity against liens arising in the course of construction of a building under a contract between the owner and contractor were released by a departure from the plans and specifications involving different materials and additional labor, which are included in the lien claims.

In Whitcher v. Hall, 5 Barn. & C. 269, 11 Eng. Com. Law, 225, the surety engaged for another to the plaintiff, for the milking of 30 cows, at a given price each per annum. Subsequently an agreement was concluded without the surety's consent, whereby the hirer was to have 28 cows for one-half the year, and 32 for the remainder, and it was held that the surety was released.

Pursuant to the foregoing views, the demurrer must be sustained.